IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CONRAD TRUMAN,<br><br>    Plaintiff,<br><br>v.<br><br>OREM CITY, a Utah municipality; OREM CITY POLICE DEPARTMENT, a division of Orem City; OREM CITY POLICE OFFICER THOMAS WALLACE, an individual; OREM CITY POLICE OFFICER WILLIAM CROOK, an individual; OREM CITY POLICE OFFICER ORLANDO RUIZ, an individual; OREM CITY POLICE OFFICER ART LOPEZ, an individual; OREM CITY POLICE OFFICER TODD FERRE, an individual; UTAH COUNTY ATTORNEY'S OFFICE, a division of Utah County; DEPUTY UTAH COUNTY ATTORNEY CRAIG JOHNSON, an individual; OFFICER(S) JOHN/JANE DOE 1-10, individuals; and ATTORNEY(S) JOHN/JANE DOE 1-5, individuals.<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS<br><br><br>Case No. 2:17-CV-775 TS<br><br>District Judge Ted Stewart |

This matter is before the Court on Defendants Utah County Deputy Prosecutor Craig Johnson and the Utah County Attorney's Office's ("UCAO") Motion to Dismiss. For the reasons discussed below, the Court will grant the Motion.

## I.   INTRODUCTION

Plaintiff Conrad Truman was convicted of murder and obstruction of justice after his wife Heidy Truman passed away from a gunshot wound. Mr. Truman was later granted a new trial based on newly discovered evidence and found not guilty. Mr. Truman brings the present § 1983 action against the police officers and prosecutors involved in his criminal prosecution, as well as

several local government agencies including the UCAO.  Defendants Utah County Deputy Prosecutor Craig Johnson and the UCAO now seek to be dismissed from the case.  Plaintiff asserts a total of ten causes of action.  The Second, Fifth, Sixth, Seventh, Eighth, and Tenth are relevant to the Motion to Dismiss.

## II.     BACKGROUND

According to the Amended Complaint ("Complaint"), Conrad and Heidy Truman were at home together on September 30, 2012, the night Heidy Truman was shot.  No one else was in the home.  At some point that evening, the couple began to quarrel and then spent some time apart.  Mr. Truman was in the kitchen alone when he thought he heard the bathroom door open.  A moment later he heard a "pop" sound.  According to the Complaint, when the shot was fired Heidy Truman was located toward the back of the house and was near the bathroom doorway.  She fell forward toward Mr. Truman onto the dining room floor.  Rushing to help her, he quickly realized she was bleeding profusely from the side of her head and was struggling to breathe.  He attempted CPR and then called 911.

When police arrived at the scene, they found Mr. Truman covered in blood, intoxicated, and in shock.  He had to be removed from Heidy Truman's body and threatened to kill the police officers if they did not save her life.

A police officer measured the scene of the crime and created a diagram that misrepresented the size and proportions of the home and was misleading about how Heidy Truman's body was situated within the home.  Most crucially, it exaggerated the distance between the back of the house (where Mr. Truman claimed he heard the shot) and the location where Heidy Truman's body was found.  Relying on this incorrect diagram, at trial the prosecution argued that Heidy Truman could not have killed herself because she could not have travelled such a long distance after being shot.

Ultimately, this served as the state court's basis for granting a new trial. The court reasoned that this compelling evidence "took a defense of suicide away from the jury's consideration" and may have changed the outcome of the trial.[1] The court found the real distance was two feet four inches less than the depiction presented and thought it possible that Heidy Truman could have taken a step or two after being shot, placing her body approximately where it was found.[2]

### III.    ALLEGATIONS AGAINST CRAIG JOHNSON

Johnson was the lead prosecutor in Plaintiff's trials. As summarized below, the Complaint alleges that Mr. Johnson took many inappropriate actions before, during, and after Mr. Truman's first criminal trial.

Before trial, Mr. Johnson allegedly:

1. approved and gave advice in preparing affidavits which contained false information or omissions.[3]
2. fabricated evidence, including:[4]
   o inducing false testimony from the Utah State Medical Examiner.
   o evidence of Mr. Truman having a financial motive to kill his wife.
   o testimony about gunshot residue ("GSR").
   o a diagram showing misleading measurements of the crime scene.
   o testimony of inconsistent statements from Mr. Truman.
   o mishandling evidence.
3. used fabricated or manufactured evidence and testimony to support arrest, charging incarceration, and prosecution of Mr. Truman.[5]
4. presented false evidence at a preliminary hearing.[6]
5. prepared and filed an arrest warrant.[7]

---

[1] Docket No. 47 Ex. D, at 12.

[2] *Id.*

[3] Docket No. 38, at 52.

[4] *Id.* at 134–35.

[5] *Id.* at 64.

[6] *Id.* at 140–47.

[7] *Id.* at 79.

6. failed to disclose:[8]
   o a PowerPoint presentation given to Utah State Medical Examiner Dr. Leis.
   o information about Heidy Truman's difficult relationship with her family as a potential suicide factor.
   o that Heidy Truman's family took action to freeze her insurance after her death.
   o that an expert forensics team drew inconclusive results in its examination of the crime scene.
   o notes and other estimates to show the crime scene was measured incorrectly.
   o evidence to show Heidy Truman retrieved a voicemail minutes before the 911 phone call.
   o evidence that Heidy Truman received a voicemail shortly before being shot.
   o exculpatory statements from the Truman's financial planner.

During or after the first trial, Mr. Johnson allegedly:

7. maliciously prosecuted Mr. Truman.[9]
8. presented the following at trial:
   o inaccurate photographs depicting the crime scene.[10]
   o fabricated evidence of financial motive.[11]
   o false evidence regarding the location of the gun.[12]
   o fabricated evidence regarding the distance Heidy Truman's body traveled after being shot.[13]
   o fabricated expert witness testimony.[14]
   o mischaracterizations of expert witness testimony.[15]
   o false evidence regarding GSR testing and relevance.[16]
   o testimony about insurance that did not have proper foundation.[17]

---

[8] *Id.* at 136–37.

[9] *Id.* at 126.

[10] *Id.* at 51.

[11] *Id.* at 83.

[12] *Id.*

[13] *Id.* at 75.

[14] *Id.* at 81.

[15] *Id.*

[16] *Id.*

[17] *Id.* at 84.

- false evidence regarding a phone call between the Trumans just prior to the shooting.[18]
- false evidence to show Mr. Truman gave inconsistent statements.[19]
- mischaracterizations of Mr. Truman's comments to police officers as being threatening.[20]
- misleading testimony about police testing of the gun.[21]
- mischaracterization of the prosecution's reliance on a theory of financial motive.[22]
- false testimony and mischaracterization of evidence regarding the location where the shooting took place.[23]

9. objected to bail and release of Mr. Truman.[24]
10. presented the case at trial a second time.[25]

## IV. DISCUSSION

### A. ALLEGATIONS 3 THROUGH 10

As a prosecutor, Mr. Johnson is entitled to absolute immunity for actions that are "intimately associated with the judicial phase of the criminal process."[26] "[T]he actions of a prosecutor are not absolutely immune merely because they are performed by a prosecutor,"[27] rather, immunity depends on "the nature of the function performed."[28] Therefore, "[t]he more distant a function is from the judicial process, the less likely absolute immunity will attach."[29]

---

[18] *Id.* at 85.

[19] *Id.*

[20] *Id.* at 86.

[21] *Id.* at 97.

[22] *Id.* at 83–84.

[23] *Id.* at 95.

[24] *Id.* at 88.

[25] *Id.* at 129.

[26] *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976).

[27] *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993).

[28] *Forrester v. White,* 484 U.S. 219, 229 (1988).

[29] *Snell v. Tunnell,* 920 F.2d 673, 687 (10th Cir. 1990).

Prosecutors engaged in administrative or investigative actives are only entitled to qualified immunity.[30]

The standard for absolute immunity can be "easier to state than apply."[31] This is because "all investigative activity could be considered in some sense to be 'preparing for the initiation of judicial proceedings.'"[32] The difference a court must seek to identify is "between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand."[33]

The Tenth Circuit emphasizes a "continuum based approach."[34] Under this analysis, the "determinative factor is 'advocacy' because that is the prosecutor's main function and the one most akin to his quasi-judicial role."[35] It follows that "absolute immunity may attach even to administrative or investigative activities 'when these functions are necessary so that a prosecutor may fulfill his function as an officer of the court.'"[36] Important factors include "(1) whether the action is closely associated with the judicial process, (2) whether it is a uniquely prosecutorial function, and (3) whether it requires the exercise of professional judgment."[37]

---

[30] *Mink v. Suthers*, 482 F.3d 1244, 1259 (10th Cir. 2007) (citing *Imbler*, 424 U.S. at 430).

[31] *Snell*, 920 F.2d at 693.

[32] *Smith v. Garretto,* 147 F.3d 91, 94 (2d Cir.1998) (quoting *Buckley,* 509 U.S. at 273).

[33] *Kalina v. Fletcher,* 522 U.S. 118, 126 (1997) (quoting *Buckley*, 509 U.S. at 273).

[34] *Mink*, 482 F.3d at 1261.

[35] *Id.* (quoting *Roberts v. Kling*, 104 F.3d 316, 319 (10th Cir. 1997).

[36] *Pfeiffer v. Hartford Fire Ins. Co.,* 929 F.2d 1484, 1490 (10th Cir. 1991) (quoting *Snell*, 920 F.2d at 693).

[37] *Mink*, 482 F.3d at 1261 (citations omitted).

Courts have considered absolute immunity appropriate for many types of actions, including:

- deciding whether to bring charges.[38]
- preparing and filing an application for an arrest warrant.[39]
- interviewing witnesses and evaluating evidence in preparation for trial.[40]
- presenting a case at trial.[41]
- introducing evidence at a hearing.[42]
- failing to independently investigate allegations.[43]
- failing to disclose evidence.[44]
- using perjured testimony at trial.[45]
- seeking a specific amount of bail.[46]
- seeking denial of bail.[47]
- negotiating a prisoner's release.[48]
- preparing and presenting post-trial motions and preparing for appeal.[49]
- malicious prosecution.[50]

---

[38] *Imbler*, 424 U.S. at 431; *Buckley*, 509 U.S. at 273.

[39] *Kalina*, 522 U.S. at 129; *Lerwill v. Joslin*, 712 F.2d 435, 437 (10th Cir. 1983); *Simon v. City of N.Y.*, 727 F.3d 167, 172 (2d Cir. 2013).

[40] *Buckley*, 509 U.S. at 273.

[41] *Id.*

[42] *Burns v. Reed*, 500 U.S. 478 (1991).

[43] *Scott v. Hern*, 216 F.3d 897, 909 (10th Cir. 2000).

[44] *Imbler,* 424 U.S. at 431 n.34.

[45] *Jones v. Shankland*, 800 F.2d 77, 80 (6th Cir. 1986) (citing *Imbler*, 424 U.S. at 431 n.34).

[46] *Lerwill*, 712 F.2d at 438.

[47] *Hart v. O'Brien*, 127 F.3d 424, 441 (5th Cir. 1997), *abrogated on other grounds by Spivey v. Robertson*, 199 F.3d 772, 775 (5th Cir. 1999)

[48] *Warney v. Monroe Cty.*, 587 F.3d 113, 121 (2d Cir. 2009).

[49] *Carter v. Burch*, 34 F.3d 257, 263 (4th Cir. 1994).

[50] *Imbler*, 424 U.S. at 427; *see also Crabtree v. Okla.*, 564 F. App'x 402, 405 (10th Cir. 2014) (finding dismissal of malicious prosecution claim appropriate because prosecutors enjoy absolute immunity for prosecutorial functions).

Courts have considered absolute immunity inappropriate in a number of instances as well, including:

- giving legal advice to police during the investigative phase of a criminal case.[51]
- assisting with the execution of a warrantless arrest.[52]
- holding a press conference.[53]
- personally attesting to the accuracy of facts contained in an affidavit.[54]
- approving a warrant affidavit that the prosecutor played no role in preparing or presenting to a court.[55]
- fabricating evidence during the investigative stages of a case before there is probable cause to make an arrest.[56]

As a prosecutor, Mr. Johnson is entitled to absolute immunity for obtaining an arrest warrant, deciding whether to prosecute, deciding whether to disclose evidence, presenting evidence at trial, objecting to bail and release, and prosecuting the case a second time. In the previous section listing 10 allegations against Mr. Johnson, allegations 3 through 10 are centered on these traditional prosecutorial functions. Because these allegations fall squarely under Mr. Johnson's "advocacy" or "quasi-judicial role" as a prosecutor, absolute immunity applies. Therefore, the Court will dismiss these allegations with prejudice.

B. ALLEGATIONS 1 AND 2

In addition to absolute immunity, Mr. Johnson asserts qualified immunity against the remaining claims—approving and presenting false or misleading affidavits and fabricating evidence prior to trial. Unlike the allegations discussed in the previous section, these could

---

[51] *Burns*, 500 U.S. at 493.

[52] *Day v. Morgenthau,* 909 F.2d 75, 77–78 (2d Cir. 1990).

[53] *Buckley*, 509 U.S. at 277–78.

[54] *Kalina*, 522 U.S. at 130 ("Testifying about facts is the function of the witness, not of the lawyer.").

[55] *Mink*, 482 F.3d at 1262.

[56] *Buckley*, 509 U.S. at 274–75.

arguably be considered investigative or administrative functions to which only qualified immunity would apply. "Qualified immunity protects officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[57] The doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."[58] "When a defendant raises a claim of qualified immunity, the burden shifts to the plaintiff to show that the defendant is not entitled to that immunity."[59] A two-part test is applied: (1) "whether the facts that a plaintiff has alleged make out a violation of a constitutional right," and (2) "whether the right at issue was clearly established at the time of defendant's alleged misconduct."[60] A court can consider the two inquiries in any order.[61]

Government officials are not required to perform their duties flawlessly to be entitled to qualified immunity. The standard is "objective reasonableness."[62] It allows "ample room for mistaken judgments" and offers protection to "all but the plainly incompetent or those who knowingly violate the law."[63] The Tenth Circuit has recognized that prosecutors may be put in the

---

[57] *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[58] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

[59] *Douglas v. Dobbs*, 419 F.3d 1097, 1100 (10th Cir. 2005).

[60] *Keith v. Koerner*, 707 F.3d 1185, 1188 (10th Cir. 2013) (internal quotation marks omitted).

[61] *Pearson,* 555 U.S. at 236.

[62] *Malley v. Briggs*, 475 U.S. 335, 334 (1986).

[63] *Id.* at 341, 343.

position of relying on information from law enforcement officers.[64] A prosecutor that acts on such information is entitled to qualified immunity if their actions are "objectively reasonable."[65]

Qualified immunity is typically asserted at summary judgment.[66] When, as in the case currently before the Court, qualified immunity is asserted at the motion to dismiss stage, the defendant faces a "more challenging standard of review than would apply on summary judgment."[67] At the motion to dismiss stage, the defendant's conduct as alleged in the complaint is scrutinized for reasonableness.[68] The standard for reviewing a motion to dismiss in qualified immunity cases is the same as that for dismissals generally.[69] All well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiff as the nonmoving party.[70] Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face,"[71] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[72] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Naked assertions devoid

---

[64] *Dopp v. Rask*, 91 F. App'x 79, 82–83 (10th Cir. 2004).

[65] *Id.*

[66] *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004) ("Although summary judgment provides the typical vehicle for asserting a qualified immunity defense, we will also review this defense on a motion to dismiss.").

[67] *Id.*

[68] *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996).

[69] *Trant v. Okla.*, 426 F. App'x 653, 659 (10th Cir. 2011) (citing *Archuleta v. Wagner*, 523 F.3d 1278, 1281 (10th Cir. 2008).

[70] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[71] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[72] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

of further factual enhancement are insufficient."[73]  Qualified immunity applies if the "facts that a plaintiff has alleged" fail to "make out a violation of a constitutional right."[74]

### 1. *Affidavits in support of warrants and subpoenas*

According to the Complaint, Mr. Johnson approved and advised police officers on affidavits filed in support of approximately 23 warrants and 37 investigative subpoenas.  All the affidavits allegedly lacked probable cause because of pervasive false information or omissions.[75] According to the Complaint, despite the errors they contained, Mr. Johnson knowingly, or with reckless disregard, approved and authorized these affidavits for presentation to a court.[76]

Whether a prosecutor is entitled to absolute or qualified immunity for their involvement in obtaining information through warrants and subpoenas is a difficult question.  In *Imbler v. Pachtman*, the Supreme Court recognized that

> the duties of the prosecutor in his role as advocate for the State involve actions preliminary to the initiation of a prosecution and actions apart from the courtroom . . . Preparation, both for the initiation of the criminal process and for a trial, may require the obtaining, reviewing, and evaluating of evidence. At some point, and with respect to some decisions, the prosecutor no doubt functions as an administrator rather than as an officer of the court. Drawing a proper line between these functions may present difficult questions . . . .[77]

In *Burns*, the Supreme Court considered whether a prosecutor appearing at a preliminary hearing in support of a search warrant should be entitled to absolute immunity.  The Court recognized that "the issuance of a search warrant is unquestionably a judicial act" and found that, although the prosecutor was accused of presenting false information at the hearing, he was

---

[73] *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

[74] *Pearson*, 555 U.S. at 232.

[75] Docket No. 38, at 52.

[76] *Id.* at 117.

[77] *Imbler,* 424 U.S. at 431 n.33.

protected by absolute immunity.[78] The Second Circuit has similarly found that issuing a subpoena is a task "adjunct" to a prosecutor's role as an advocate and so a prosecutor is entitled to absolute immunity.[79]

Conversely, in *Mink* the Tenth Circuit found that a prosecutor *was not* entitled to absolute immunity for approving a warrant affidavit because the prosecutor "played no role in preparing the affidavit" or "preparing, analyzing, and presenting pleadings to a court."[80] Acknowledging cases like *Burns*, where prosecutors have been "absolutely immunized for drafting, filing, and arguing in support of an arrest or search warrant," *Mink* reasoned that merely reviewing an affidavit "falls on the side of investigatory legal advice," but had the prosecutor been involved in preparing the affidavit and presenting pleadings in court, it would have been "quite a different case."[81]

The Tenth Circuit subsequently confronted such a case in *Klen v. City of Loveland*.[82] There, the court found that a city attorney was entitled to absolute immunity for helping to prepare an affidavit and presenting it in judicial proceedings. As noted in a concurring opinion, the difference in the cases was that the *Mink* prosecutor "was not part of an active prosecutorial function," but merely reviewed an affidavit, while the *City of Loveland* prosecutor helped prepare an affidavit and then presented it in court in an active case.[83]

The Court is not currently able to analyze each affidavit to determine whether absolute immunity should apply. Mr. Johnson would likely be entitled to absolute immunity in at least

---

[78] 500 U.S. at 492.

[79] *Simon*, 727 F.3d at 171.

[80] 482 F.3d at 1262.

[81] *Id.*

[82] 661 F.3d 498 (10th Cir. 2011).

[83] *Id.* at 518 (O'Brien, J., concurring).

some cases—particularly if he helped prepare an affidavit and presented it in court once the case was already active. However, the Complaint does not make clear exactly what role Mr. Johnson played in preparing and presenting each individual affidavit. And, in most cases the timing and circumstances of individual filings in relation to the Plaintiff's eventual trial is unclear.

The Complaint asserts that absolute immunity should not apply to the majority of affidavits because they allegedly include the statement, "This affidavit has been reviewed by Craig Johnson of the Utah County Attorney's Office, and it has been approved for presentation to the Court."[84] Relying on *Kalina v. Fletcher,* Plaintiff asserts that where this statement appears, Mr. Johnson should not be entitled to absolute immunity because he is acting as a witness and not as an advocate. However, this reliance is misplaced.

In *Kalina*, a prosecutor filed a separate "Certification" to support the affidavit she prepared. In the certification, the prosecutor "personally vouched for the truth of the facts set forth in the certification under penalty of perjury."[85] The Court found that the prosecutor's "act in personally attesting to the truth of the averments in the certification" was not a function of an advocate, but rather that of a witness.[86] For her role as a witness, the prosecutor was only entitled to qualified immunity.[87]

The Tenth Circuit has repeatedly clarified the holding in *Kalina* as a limitation on absolute immunity only when the prosecutor acts as a witness by personally attesting to the truthfulness of the facts contained in the affidavit.[88] In this case, by making the alleged statement, Mr. Johnson

---

[84] Docket No. 38, at 74.

[85] *Kalina*, 522 U.S. at 121.

[86] *Id.* at 129.

[87] *Id.*

[88] *Scott*, 216 F.3d at 909–10 (finding prosecutor absolutely immune for role in preparing affidavit because she did not "step outside her prosecutorial role" by attesting to the truth

did not personally vouch for the truthfulness of the facts, but merely certified his review and approval for presentation.

Assuming some affidavits are not covered by absolute immunity, the analysis would proceed under qualified immunity.[89]  As stated above, the two-part test is: (1) "whether the facts that a plaintiff has alleged make out a violation of a constitutional right," and (2) "whether the right at issue was clearly established at the time of defendant's alleged misconduct."[90]

To satisfy these requirements, a "plaintiff may not simply allege a Fourth Amendment violation in the abstract."[91]  Rather, they must show in a "more particularized sense" that a constitutional violation occurred.[92]  However, "[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation."[93]

---

of the allegations); *Lyghtle v. Breitenbach*, 139 F. App'x 17, 20 (10th Cir. 2005) (granting absolute immunity where prosecutor "did not swear or attest to the truth of the information contained in the alias arrest warrant and the bond forfeiture order").

[89] The Complaint also alleges that information obtained through subpoenas violated Mr. Truman's Fourth Amendment rights.  As with warrants, context determines whether absolute immunity applies. *See Garmon v. Cty. of L.A.*, 828 F.3d 837, 844 (9th Cir. 2016).

[90] *Keith*, 707 F.3d at 1188 (internal quotation marks omitted).

[91] *Douglas*, 419 F.3d at 1101.

[92] *Id. See also Groh v. Ramirez,* 540 U.S. 551, 578 (2004) (foreclosing a litigant's ability "to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights") (internal quotation marks omitted); *Herring,* 218 F.3d 1171, 1176 (10th Cir. 2000) ("A plaintiff cannot simply identify a clearly established right in the abstract and allege that the defendant has violated it.").

[93] *Pierce v. Gilchrist,* 359 F.3d 1279, 1298 (10th Cir. 2004); *see also Vinyard v. Wilson*, 311 F.3d 1340, 1350 (11th Cir. 2002) (noting that the "constitutional provision may be so clear and the conduct so bad that case law is not needed to establish that this conduct cannot be lawful").

In this case, Plaintiff appears to assert two claims, that through the actions of Johnson: (1) warrants were obtained without demonstrating probable cause;[94] and (2) affidavits included false statements and/or omitted information which, if included, would have vitiated probable cause.

These are valid and established rights. The Fourth Amendment only permits a warrant to be issued "upon probable cause, supported by Oath or affirmation."[95] And, "[i]nherent in this language is 'the obvious assumption that there will be a truthful showing' of facts to support probable cause, meaning that 'the information put forth is believed or appropriately accepted by the affiant as true.'"[96] Otherwise, the Fourth Amendment is "no barrier at all if it can be evaded by a policeman concocting a story that he feeds a magistrate."[97]

### a. *Warrants obtained without demonstrating probable cause*

The existence of probable cause is analyzed by "setting aside the false information and reviewing the remaining contents of the affidavit."[98] Similarly, with regard to alleged material omissions, the "existence of probable cause is determined by examining the evidence 'as if the omitted information had been included' and inquiring whether probable cause existed in light of all the evidence, including the omitted information."[99]

---

[94] As noted in Footnote 90, the Complaint also asserts that information was obtained through subpoenas. The Court's consideration of warrants applies to these claims. Notably, to support its Fourth Amendment allegation, Plaintiff relies on a misstatement of Utah law, saying the subpoenas were not based on "good cause." The correct standard under Utah Code Ann. § 77-22-2 is "reasonably related."

[95] U.S. Const. amend. IV.

[96] *Harte v. Bd. of Comm'rs of Cty. of Johnson, Kan*, 864 F.3d 1154, 1162 (10th Cir. 2017) (quoting *Franks v. Delaware*, 438 U.S. 154, 164-65 (1978).

[97] *Baldwin v. Placer Cty.*, 418 F.3d 966, 970 (9th Cir. 2005).

[98] *Pierce*, 359 F.3d at 1293.

[99] *Id*. (quoting *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996).

In this case, Plaintiff does not present any specific analysis of any single affidavit to show that setting aside false statements and including omitted information vitiates probable cause. Instead, Plaintiff asserts an unsupported legal conclusion that

> each and every warrant and investigative subpoena sought and authorized in this case was invalid since it was not based upon the requisite showing of probable or good cause, and further, because the affidavit in support of the warrant or investigative subpoena contained material false and misleading statements or omissions made knowingly or in reckless disregard for the truth.[100]

The Court cannot itself conduct the requisite affidavit-by-affidavit analysis to determine whether probable cause existed in each case because Plaintiff has not provided adequate information. Except for the affidavit in support of the arrest warrant, to which absolute immunity applies, no affidavits have been provided to the Court. Furthermore, the Complaint describes the affidavits and their alleged deficiencies in aggregate, listing many alleged "general themes" and "repeated facts," but few specifics about which affidavit(s) included which deficiencies.[101] It also does not describe which, if any, valid bases for probable cause were included in any particular warrant. Plaintiff has not pled sufficient facts to show that the warrants lacked probable cause and the Complaint does not describe the details of the affidavits with enough detail to enable the court to conduct a probable cause analysis.

   b. *Affidavits included false statements and/or omitted information attributable to Mr. Johnson*

The Complaint is also deficient because it does not plead adequate facts to plausibly show that Mr. Johnson was involved in adding the false statements or making the omissions to the affidavits, or that he knew or should have known of the errors.

---

[100] Docket No. 38, at 46.

[101] *Id.* at 53.

Mr. Johnson allegedly "provided information, gave advice, aided, [and] supervised the preparation" of each affidavit.[102] However, the Complaint offers no facts to support these allegations. No specifics are offered as to what information or advice Mr. Johnson offered to whom. No details are offered to show how he aided or supervised the preparation and how that led to the alleged fabrications.

The Complaint also fails to plead adequate facts to show that Mr. Johnson knew or should have known the affidavits contained these alleged errors. Listed below are the deficiencies allegedly contained in the affidavits.

1. overstating the distance between the place where Heidy Truman was allegedly shot and where her body was found.
2. overstating the distance the gun was found from the body.
3. misrepresenting evidence showing whether Heidy Truman took a bath.
4. misrepresenting that the gun was pressed against Heidy Truman's head with considerable pressure.
5. asserting that the wound was five inches above Heidy's ear.
6. asserting that Mr. Truman owned the gun.
7. asserting that Heidy Truman could not have traveled any distance after being shot.
8. misrepresenting statements that Mr. Truman was threatening and belligerent at the crime scene.
9. misrepresenting that Mr. Truman was obstructive with the 911 dispatcher.
10. misrepresenting that Mr. Truman gave inconsistent statements.
11. asserting that Mr. Truman had a financial motive to kill his wife.
12. misrepresenting that there was a phone conversation between Mr. and Mrs. Truman minutes before her death.
13. misleading statements about Mr. Truman and the crime scene being covered in blood.
14. asserting that there was no evidence Heidy Truman was shot in the hallway or bathroom.
15. asserting there was evidence that Mr. Truman's blood was found on the firearm.
16. statements that Mr. Truman was evasive about where firearms were located.
17. allegations that Mr. Truman refused to cooperate with officers and was defensive when meeting with them.[103]

---

[102] *Id.* at 117.

[103] *Id.*

Few facts are offered to support the allegation that Mr. Johnson knowingly allowed these alleged falsehoods to be included in the affidavits. Defendant Johnson asserts that he merely "relied upon the information he received from law enforcement and investigators which he believed trustworthy information."[104]

To establish his knowledge, the Complaint alleges that Mr. Johnson visited the crime scene several times,[105] was involved with scene stringing and processing,[106] was told by an unidentified person that the gun was found near the body,[107] was generally advised by police throughout the investigation,[108] met with an expert forensics team,[109] reviewed photographs,[110] and viewed a scene reconstruction.[111] None of these asserted facts are relevant to many of the above listed falsehoods, such as whether Heidy Truman took a bath, whether Mr. Truman's blood was found on the firearm, or whether there was a financial motive. Facts that may be more applicable are nevertheless general and vague. For example, the Complaint alleges that because Mr. Johnson visited the crime scene he should have known the distance between the place where Heidy Truman was allegedly shot and where her body was found was exaggerated by approximately two feet.[112]

In this case, Plaintiff's vague factual allegations do not allow the "court to infer more than a mere possibility of misconduct." Taking Mr. Truman's "allegations as true, viewing them in

---

[104] Docket No. 47, at 20.

[105] Docket No. 38, at 43.

[106] *Id.* at 40.

[107] *Id.* at 94–95.

[108] *Id.* at 39.

[109] *Id.* at 73.

[110] *Id.*

[111] *Id.*

[112] *Id.* at 72.

the light most favorable to him, and making all reasonable inferences in his favor, as we are required to do,"[113] there is inadequate support to show that Mr. Johnson knew or should have known of the inaccuracies listed above. Such bare assertions do not meet the general pleading standard under *Iqbal* and *Twombly*. The allegations are insufficient to show that an established constitutional right was violated and therefore do not meet the burden to overcome qualified immunity.[114]

### 2. Fabricated Evidence

Plaintiff alleges that Mr. Johnson fabricated evidence in several instances, including inducing false testimony from the state medical examiner, evidence that Mr. Truman had a financial motive to murder Heidy Truman, diagrams exaggerating the distance Heidy Truman traveled after being shot, evidence that Mr. Truman offered inconsistent accounts of events, and misleading evidence related to gunshot residue on Mr. Truman's hands.

### a. State Medical Examiner Testimony

The Complaint alleges that on July 17, 2013, Mr. Johnson attended a meeting at the Utah State Medical Examiner Office with Dr. Leis. The intention of the meeting was allegedly to persuade Dr. Leis to change Heidy Truman's declared manner of death to "homicide" using false evidence of financial motive and an inaccurate depiction of the crime scene. Dr. Leis had previously performed Heidy Truman's autopsy and issued a death certificate listing the manner of

---

[113] *Mink v. Knox (Mink II)*, 613 F.3d 995, 1002 (10th Cir. 2010).

[114] In some cases, the Complaint does allege certain facts to show how Mr. Johnson used fabricated evidence and that he should have known the evidence was fabricated. However, these factual allegations do not go toward showing that he was personally involved in the fabrication itself. The earlier sections of this Order collectively address each instance of Mr. Johnson's alleged exploitation of fabricated evidence.

death as "could not be determined."[115]  Officer Wallace requested the meeting and others were present, including Detective Orlando Ruiz, Todd Park from the Salt Lake County Police Department, and Utah County medical investigator Keith Stephens.[116]  Wallace prepared and presented a Power Point presentation to Dr. Leis that included information attempting to show that Mr. Truman had a financial motive to kill Heidy Truman, and an inaccurate diagram of the crime scene that misrepresented the size and proportions of the Truman home and gave a misleading depiction of where Heidy Truman's body was found.[117]

Although the Complaint acknowledges that Officer Wallace prepared and gave the presentation at the meeting, it asserts that upon information and belief Johnson "made representations to Dr. Leis and answered questions."[118]  Dr. Leis subsequently changed his manner of death certification from "not determined" to "homicide."  Plaintiff attached to the Complaint a statement by Dr. Leis wherein he testifies that he made the change "[b]ased on the information provided in the PowerPoint as well as the statements and explanations of the prosecution team."[119]

The Complaint does not allege any specific statements or representations made by Mr. Johnson.  Also, although Mr. Leis refers to a "prosecution team," he does not mention Mr. Johnson by name or attribute any specific statement to him.  The term "prosecution team" cannot be meant to narrowly refer only to actual prosecutors in the room because the term infers plurality and Mr.

---

[115] Docket No. 38, at 76–78.

[116] Docket No. 35 Ex. C. ¶ 27.

[117] Docket No. 38, at 76–78.

[118] *Id.* at 70.

[119] Docket No. 35 Ex. C. ¶ 44.

Johnson was the only prosecutor in the meeting.[120]   Therefore, whether the term refers to Mr. Johnson at all or only to some subset of meeting attendees excluding Mr. Johnson is unclear.

These allegations do not rise above the level of an "unadorned, the-defendant-unlawfully harmed-me accusation."[121]   Such bare assertions do not meet the general pleading standard under *Iqbal* and *Twombly*.   They are insufficient to show that an established constitutional right was violated and, therefore, do not meet the burden to overcome qualified immunity.

In addition to being insufficiently pleaded, these allegations are potentially problematic because Mr. Johnson may be entitled to absolute immunity.   Relying on *Buckley v. Fitzsimmons,* the Complaint asserts that Mr. Johnson should not be entitled to absolute immunity because the meeting with Dr. Leis took place in the investigative stages of the case and Mr. Johnson was acting in an investigative role.

In *Buckley*, the Supreme Court considered whether absolute immunity should apply to a prosecutor's actions who had worked with detectives to obtain favorable (and allegedly fabricated) expert testimony.   In that case, the prosecution wished to link a footprint found at a crime scene with a specific suspect.   After three separate lab studies failed to make a reliable connection, the prosecutor and detectives found an expert witness with a questionable reputation who was willing to give the testimony they desired.[122]   Notably, this "witness shopping" where the prosecutor and detectives worked "hand in hand" took place more than ten months before the suspect was arrested and well before there was probable cause to either make an arrest or initiate judicial proceedings.[123]

---

[120] Docket No. 35, Ex. C.

[121] *Iqbal*, 556 U.S. at 678.

[122] The witness "allegedly was well known for her willingness to fabricate unreliable expert testimony."  *Buckley*, 509 U.S. at 262.

[123] *Id*. at 275.

The Court reasoned that this type of evidence gathering (as opposed to evidence evaluation) is not covered by absolute immunity because the prosecutor was performing essentially the same function as the detectives and could not have been acting as an advocate because there was no probable cause to have anyone arrested at the time.[124]   However, while denying absolute immunity in that specific circumstance, the Court recognized that actions taken in preparation for the initiation of judicial proceedings, including evaluating evidence and witness preparation, are covered by absolute immunity.  The Court reasoned that the position that absolute immunity should apply only to the act of initiation a proceeding and conduct occurring in the courtroom was "extreme" and "plainly foreclosed" by precedent.[125]

In this case, like the prosecutor in *Buckley*, Mr. Johnson attended a meeting with an expert witness.  However, the timing and circumstances of the meeting strongly suggest that Mr. Johnson was acting in the role of an advocate and would be entitled to absolute immunity.   Unlike in *Buckley*, Mr. Johnson had almost certainly already made the decision to file charges and had probable cause before the expert witness meeting occurred.  The meeting with Dr. Leis took place on July 17, 2013.  Just two days later, on July 19, Mr. Johnson signed a criminal information charging Mr. Truman with murder and obstruction of justice.  The information included a lengthy probable cause statement that did not rely on information or testimony from Dr. Leis.  Indeed, Dr. Leis did not change the manner of death until July 22, 2013, after charges were filed.  Both the content and timing of the information suggest that its preparation was well underway and independent of the meeting with Dr. Leis.  There are no factual allegations to suggest that Mr. Johnson was acting "hand in hand" with law enforcement officers to obtain false testimony.  To

---

[124] *Id.*

[125] *Id.* at 272.

the extent that his presence at the meeting was in the service of evaluating evidence or preparing witness testimony for trial, his actions would be covered by absolute immunity.

b. *Financial Motive, Gunshot Residue, Crime Scene Diagram, Inconsistent Statements, Mishandled Evidence*

The Complaint alleges that Officer Wallace fabricated testimony and other evidence of a financial motive with "the knowledge, approval, and/or advice of Johnson."[126] The Complaint contains no facts to support these allegations. No claims are made as to what specifically Mr. Johnson knew, what actions he approved, how he approved them, or what advice he offered to Officer Wallace.

The Complaint also alleges that several police officers "with the aid of Johnson" fabricated testimony that Mr. Truman intentionally washed his hands before requesting that they be tested for GSR.[127] Johnson was also allegedly involved in fabricating evidence to explain why the GSR samples were collected but never tested before the first trial.[128] The Complaint does not include any facts to support these allegations.

The Complaint further alleges that Johnson, among others, "fabricated, aided, advised, and/or directed" false evidence that misrepresented the proportions of the Truman home and where Heidy Truman's body was found within the home.[129] The Complaint does not allege any facts to support these allegations.

---

[126] Docket No. 38, at 69.

[127] *Id.* at 66.

[128] *Id.* at 67.

[129] *Id.* at 73, 90.

The Complaint also alleges that Mr. Johnson, among others, fabricated testimony that Mr. Truman made inconsistent statements about the course of events the night Heidy Truman was shot.[130]  The Complaint does not allege any facts to support this allegation.

The Complaint also alleges that Mr. Johnson, among others, mishandled evidence.[131]  The Complaint does not allege any facts to support this allegation.

The allegations that Mr. Johnson fabricated evidence do not rise above the level of an "unadorned, the-defendant-unlawfully-harmed-me accusation."[132]  Such bare assertions do not meet the general pleading standard under *Iqbal* and *Twombly*.  They are insufficient to show that an established constitutional right was violated and therefore do not meet the burden to overcome qualified immunity.

## V.    ALLEGATIONS AGAINST THE UTAH COUNTY ATTORNEY'S OFFICE

Plaintiff alleges that UCAO violated his constitutional rights because it failed to train and supervise its prosecutor employees, including Mr. Johnson.[133]  However, "[a] municipality may not be held liable where there was no underlying constitutional violation by any of its officers"[134]  Because the allegations against Mr. Johnson are not well pled and must be dismissed, it is axiomatic that the UCAO cannot be held liable for any constitutional violation.  For the reasons discussed below, the claims against UCAO also must be dismissed because they are not well plead.

In order to successfully establish a § 1983 claim against a municipality, a plaintiff must establish three elements: "(1) official policy or custom, (2) causation, and (3) state of mind."[135]

---

[130] *Id.* at 134–135.

[131] *Id.* at 64.

[132] *Iqbal*, 556 U.S. at 678.

[133] Docket No. 38, at 148–151, 155–160.

[134] *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993).

[135] *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013).

An official policy or custom can take several forms, including:

> (1) a formal regulation or policy statement; (2) an informal custom amount[ting] to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused.[136]

To establish the causation element, a plaintiff must do more than merely "identify conduct properly attributable to the municipality."[137] This is because the municipality's liability does not arise under a theory of *respondeat superior.*[138] Rather, liability arises when the municipality's policies or customs themselves cause the civil rights violation.[139] Therefore, the plaintiff must "demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged."[140] This includes a showing of "the requisite degree of culpability" and "a direct causal link between the municipal action and the deprivation of federal rights."[141]

Finally, establishing the state of mind element requires a plaintiff to "demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious

---

[136] *Bryson v. City of Okla. City,* 627 F.3d 784, 788 (10th Cir. 2010) (internal quotation marks omitted).

[137] *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 404 (1997).

[138] *Moss v. Kopp*, 559 F.3d 1155, 1168 (10th Cir. 2009).

[139] *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

[140] *Brown*, 520 U.S. at 404.

[141] *Id.*

consequences."[142] Typically, this is established by "proving the existence of a pattern of tortious conduct."[143] In limited circumstances, "deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction."[144]

Plaintiff seeks to establish liability by alleging a failure to adequately train or supervise employees. In his Eighth cause of action, Plaintiff alleges that UCAO "failed to properly train its agents and attorneys," creating a culture "supporting and encouraging constitutional violations" that contributed to and proximately caused the alleged violations to Mr. Truman's rights.[145] Similarly, in his Tenth cause of action, Plaintiff alleges that UCAO's practice, custom and policy of not providing adequate training or supervision of its attorneys showed deliberate indifference and allowed the alleged constitutional violations to occur.[146]

A city can only be held liable under § 1983 for failure to train when that failure reflects a deliberate or conscious choice and that training is closely related to and actually caused the offensive conduct.[147] Deliberate indifference requires more than simply alleging that a particular individual was not adequately trained, or that a specific incident could have been avoided through better training.[148] Rather, the standard would be met by a showing that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of

---

[142] *Schneider,* 717 F.3d at 770 (internal quotation marks omitted).

[143] *Id*. at 771 (internal quotation marks omitted).

[144] *Id.* (internal quotation marks omitted).

[145] Docket No. 38, at 150.

[146] *Id.* at 155–60.

[147] *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

[148] *Id*. at 390–91.

constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."[149]

In this case, Plaintiff's allegations are in the form of broad statements such as, "it was the policy and/or custom of UCOA to inadequately supervise and train its attorneys."[150] Plaintiff does not allege what supervision or training prosecutors received or why it was deficient. As for why the need for more or different training was obvious, Plaintiff only alleges that "[u]pon information and belief" UCAO was aware of constitutional violations. Plaintiff appears to attempt to establish a pattern of repeated offenses by alleging that, "upon information and belief" UCAO had "been made aware of the commission of similar constitutional violations committed against several other criminal defendants."[151]

These allegations do not rise above the level of "a formulaic recitation of the elements of a cause of action." Such bare assertions do not meet the general pleading standard under *Iqbal* and *Twombly*. They are insufficient to establish that UCAO failed to adequately train its prosecutors with deliberate indifference as an official policy or custom and that its failure to do so resulted in the alleged constitutional violations.

## VI.    SUMMARY

### 1.  Second Cause of Action

Truman's Second cause of action is against Mr. Johnson and alleges Fourth Amendment violations for unreasonable searches and seizures. Plaintiff alleges that, through the actions of Mr. Johnson, warrants were obtained without probable cause and affidavits were filed that contained

---

[149] *Id*. at 390*; see also Swasey v. W. Valley City*, No. 2-13-CV-00768-DN, 2015 WL 476114, at *7 (D. Utah Feb. 5, 2015).

[150] Docket No. 38, at 158.

[151] *Id.* at 157.

misrepresentations. This cause of action will be dismissed because it is barred by qualified immunity.

2. *Fifth Cause of Action*

Truman's Fifth cause of action is against Mr. Johnson for malicious prosecution. This cause of action will be dismissed because the claim is barred by absolute immunity.

3. *Sixth Cause of Action*

Truman's Sixth cause of action is against Mr. Johnson for allegedly fabricating evidence. This cause of action will be dismissed because the allegations do not meet the standards of a well-pleaded complaint and fail to meet the burden necessary to overcome the qualified immunity defense.

4. *Seventh Cause of Action*

Truman's Seventh cause of action is against Mr. Johnson under the Utah State Constitution. Truman alleges that Mr. Johnson relied on fabricated evidence in preparing the criminal information and at the preliminary hearing. This cause of action will be dismissed because the claim is barred by absolute immunity.

5. *Eighth Cause of Action*

Truman's Eighth cause of action is against both Mr. Johnson and UCAO for procedural and due process violations. Specifically, Truman alleges that the "prosecution and criminal proceedings lacked a fundamental fairness." This cause of action will be dismissed against Johnson because the claims are barred by absolute immunity. The claim will also be dismissed against UCAO because Plaintiff has not adequately pled a constitutional violation and has not met the standard to establish a § 1983 claim against a municipality.

6. *Tenth Cause of Action*

Truman's Tenth cause of action is against UCAO for promoting unlawful policies, practices or customs that caused the alleged constitutional violations against him. The claim will

be dismissed because Plaintiff has not adequately pled a constitutional violation and has not met the standard to establish a § 1983 claim against a municipality.[152]

## VII. CONCLUSION

It is therefore

ORDERED that Defendant's Motion to Dismiss (Docket No. 47) is GRANTED.

DATED this 19th day of October 2018.

BY THE COURT:

_____

Ted Stewart
United States District Judge

---

[152] Defendants assert that a number of claims should be barred by collateral estoppel, including allegations of malicious prosecution and fabricating evidence. Because these issues are resolved on other grounds, the Court does not need to reach the collateral estoppel issue.