**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| CONRAD TRUMAN,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF OREM, et al.,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART THE REMAINDER OF THE MOTION TO QUASH SUBPOENA (ECF NO. 39)**<br><br>Civil No. 2:17-cv-00775-TS-EJF<br><br>Judge Ted Stewart<br><br>Magistrate Judge Evelyn J. Furse |

In July 2017, Mr. Truman filed this civil rights action under 28 U.S.C. § 1983 against Defendants City of Orem, Orem City Police Department, Officer Thomas Wallace, Officer William Crook, Officer Orlando Ruiz, Officer Art Lopez, and Officer Todd Ferre (collectively, "Orem City Defendants"). (Compl., ECF No. 2.) His Amended Complaint serves as the operative pleading in this case. (Am. Compl., ECF No. 38.) Mr. Truman alleges the Orem City Defendants engaged in various misconduct, including some that resulted in his initial conviction on charges of domestic violence homicide and obstruction of justice in state court. (Id.) After the conviction, Mr. Truman hired new counsel who conducted additional investigation into the case. (Id., ¶¶ 392–95, 401–409.) Mr. Truman's new counsel filed an amended motion for a new trial detailing instances of police and prosecutorial misconduct and other alleged legal errors. (Id., ¶¶ 396–97.) The court granted Mr. Truman's amended motion for a new trial. (Id., ¶ 411.) At the second trial, the jury found Mr. Truman not guilty. (Id., ¶ 424.)

As relevant to the Motion currently before the Court, attorney Ronald J. Yengich represented Mr. Truman up to and including that initial jury trial. (Mot. to Quash

Subpoena, ECF No. 39.)  Some of Mr. Truman's claims allege the Orem City

Defendants withheld and or failed to disclose evidence in violation of the Due Process

Clause and Brady v. Maryland, 373 U.S. 83 (1963).  (Compl. ¶¶ 401-409, 516-526, ECF

No. 38.)

      In defending this action, the Orem City Defendants subpoenaed documents from

Mr. Yengich's file on the first criminal case.  (Subpoena, ECF No. 44-1.)  Third party Mr.

Yengich moved to quash the subpoena based on the attorney-client privilege and work

product doctrine.  (Mot. to Quash Subpoena, ECF No. 39.)  The Orem City Defendants

opposed the Motion to Quash, arguing that in this case, Mr. Truman waived the

attorney-client privilege and work product protection by asserting that the Orem City

Defendants withheld evidence in violation of the Due Process Clause and Brady.

(Opp'n to Mot. to Quash 1-2, ECF No. 44.)

      On May 15, 2018, the Court held a hearing on the Motion to Quash.  (ECF No.

46.)  The Court denied in part, granted in part, and requested further briefing on the

Motion.  (Order Denying in Part & Granting in Part Mot. to Quash (ECF No. 39), ECF

No. 50.)  The Court denied the Motion to Quash "insofar as Mr. Yengich must produce

the documents within the scope of the subpoena to [Mr. Truman's] current counsel" and

granted the Motion "insofar as Mr. Yengich need not provide such documents directly to

[the Orem City] Defendants' counsel."  (Id., ¶ 1.)  The Court further ordered Mr. Truman

to provide a privilege log to the Orem City Defendants by June 22, 2018, and instructed

the parties to brief the issue of the scope of the waiver of the attorney-client privilege

and work product protection after production of the privilege log.  (Id., ¶¶ 2-3.)

The Orem City Defendants filed their Memorandum on the scope of the waiver, (Orem Defs.' Mem. re Scope of Waiver of Attorney-Client Privilege & Attorney Work Product Protection ("Mem."), ECF No. 53), which Mr. Truman opposed, (Mem. in Opp'n to Orem Defs.' Mem. re Scope of Waiver of Attorney-Client Privilege & Attorney Work Product Protection ("Opp'n"), ECF No. 60). The Orem City Defendants subsequently filed a Reply, (Orem City Defs.' Reply Mem. re Scope of Waiver of Attorney-Client Privilege & Attorney Work Product Protection ("Reply"), ECF No. 61), and the Court heard further oral argument on the remaining part of the Motion, taking it under advisement, (ECF No. 64).

After considering the briefing, arguments of counsel, and applicable law, the Court finds Mr. Truman did not waive the attorney-client privilege and work product protection with respect to materials relevant to the withholding of information from Mr. Yengich and Mr. Truman. However, the privilege log needs supplementation. Therefore, the Court GRANTS in part and DENIES in part the remainder of the Motion to Quash.

The Orem City Defendants contend Paragraphs 401 to 409 and 516 to 526 of the Amended Complaint make the allegations of withholding that waive the privilege and protection. (Mem. 12, ECF No. 52.) As explained below, the Court finds Mr. Truman's allegations make some privileged and/or protected materials relevant by asserting Brady claims in this case. However, "by enacting 42 U.S.C. § 1983, Congress concluded that private enforcement of individual rights is in the public interest. This important public policy will not be advanced by presenting a party with the Hobson's choice of either dropping its claim or revealing all confidential communications related to

a criminal defense." <u>Greater Newburyport Clamshell All. v. Pub. Serv. Co.</u>, 838 F.2d 13, 22 (1st Cir. 1988).  Applying the relevant tests for waiver of the attorney-client privilege and disclosure of work product, the Court declines to find waiver or require disclosure and GRANTS the Motion to Quash as to the privileged and protected materials.  The Court also declines to conduct an <u>in camera</u> review of certain documents on the privilege log as the Orem City Defendants request because the Orem City Defendants made the request on the premise of waiver, which the Court has rejected.  The Court DENIES the Motion to Quash to the extent that it ORDERS Mr. Truman to review the materials withheld for compliance with this Order, produce additional materials as appropriate, and supplement his privilege log to meet the requirements of Federal Rule of Civil Procedure 26(b)(5)(A).

## FACTUAL BACKGROUND

In October 2012, Mr. Truman's wife, Heidy Truman, died from a gunshot wound to the head, inflicted at their Orem, Utah home.  (Am. Compl., ¶¶ 23–25, ECF No. 38.) Only Mr. Truman and Mrs. Truman were home at the time.  (<u>Id.</u>, ¶ 26.)  After an investigation, in July 2013, the State of Utah charged Mr. Truman with a domestic violence homicide and obstruction of justice.  (<u>Id.</u>, ¶ 374.)  As relevant to the Motion currently before the Court, Mr. Truman asserts in his Amended Complaint that during their investigation, his new counsel discovered facts that the Orem City Defendants withheld from Mr. Truman and Mr. Yengich prior to the first trial including:

- Evidence regarding the measurements of the house and hallway where Mrs. Truman was found and who made them;

- A 96-slide PowerPoint given to Dr. Leis, the medical examiner;

- Evidence of and the lack of testing of gunshot residue;

- An attempt to claim or freeze insurance benefits by Janet Wagner;

- Mrs. Truman's relationship with her family and her mental state;

- A forensic consultant team's conclusion that they could not ascertain how or where Mrs. Truman was shot or Mr. Truman's location at that time;

- Evidence related to Mr. Truman's call to Mrs. Truman prior to the 911 call;

- Exculpatory statements from financial planner John Engh regarding the Trumans' financial situation, statements from first responders about the location of the black handled gun, and others Mr. Truman contends were withheld;

- Police reports noting Mr. and Mrs. Truman's lack of financial trouble.

(Id., ¶¶ 401–04, 406-07, 516, 524.)  Alleging that the Orem City Defendants suppressed evidence bearing on these issues, Mr. Truman asserts a claim against the Orem City Defendants for "Withholding Exculpatory Evidence" in violation of the Due Process Clause.  (Id., ¶¶ 516–17, 524, 526.)

Specifically, Mr. Truman alleges that:

(1) His new counsel discovered that the first responders incorrectly measured the Truman house and the location of Mrs. Truman's body.  The Orem City Defendants allowed the medical examiner and others to rely on the erroneous information and then withheld evidence concerning the faulty measurements and a 96-slide PowerPoint given to the medical examiner containing the faulty measurements, and attempted to cover-up the measurement errors, (Am. Compl., ¶¶ 401, 403, 524(a), (g));

(2) Mr. Truman's new counsel discovered that gunshot residue samples taken from Mr. and Mrs. Truman's hands the night of the shooting were not sent for testing before the first trial and that the Orem City Defendants failed to disclose to Mr. Yengich that they had not sent the samples for analysis and lost or destroyed other gunshot residue samples, (Am. Compl., ¶¶ 406, 524(b), (j));

(3) New counsel also discovered that the Orem City Defendants knew and failed to disclose that Mrs. Truman's mother, Janet Wagner, attempted to claim and/or freeze Mrs. Truman's life insurance, (Am. Compl., ¶¶ 326, 524(c));

(4) The Orem City Defendants "[f]ail[ed] to disclose and hid the fact that [Mrs. Truman] had a troubled relationship with [her family] and her mother, had a hard childhood, and had an adverse family upbringing which not only is a suicide risk factor, but because the family was somewhat estranged, discredited the[] [family's] knowledge of [Mrs. Truman's] personal thoughts, feelings, and potential conduct as well as their knowledge of [Mr. Truman] and his relationship with [Mrs. Truman]," (Am. Compl., ¶ 524(d));

(5) At the second trial, the Orem City Defendants disclosed that they had hired a forensic consulting team to review the case prior to the first trial, and the team determined they could not draw any conclusions about Mr. or Mrs. Truman's locations but did find the blood spatter on Mr. Truman's shirt consistent with giving CPR, (Am. Compl., ¶¶ 329-331, 341-42, 524(e));

(6) New counsel discovered that the Orem City Defendants withheld telephone records showing Mr. Truman's call to Mrs. Truman before the gunshot was not a

completed call, that the call went to voicemail, and that Mrs. Truman accessed her voicemail three minutes before Mr. Truman called 911, (Am. Compl., ¶¶ 407, 524(f));

(7) New counsel discovered that the Trumans' financial planner, John Engh, told the police that Mr. Truman did not have a financial motive to kill Mrs. Truman and that officers and first responders identified the location of the black handled gun, but the Police failed to disclose this evidence, (Am. Compl., ¶¶ 402(e), 404(d), 524(h));

(8) Mr. Truman's new counsel discovered that the Orem City Defendants deleted a statement from the police report indicating that the Trumans did not struggle financially, (Am. Compl., ¶¶ 402(c), 524(i)).

## LEGAL STANDARD

"Federal Rule of Evidence 501 provides that privileges in federal-question cases generally are 'governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.'" In re Qwest Commc'ns Int'l Inc., 450 F.3d 1179, 1184 (10th Cir. 2006) (quoting Fed. R. Evid. 501)). "The attorney-client privilege is 'the oldest of the privileges for confidential communications known to the common law.'" Qwest, 450 F.3d at 1185 (quoting Upjohn Co. v. United States, 449 U.S. 383, 389 (1981)). "'Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'" Id. (quoting Upjohn, 449 U.S. at 389). A person may expressly or impliedly waive the attorney-client privilege. See Qwest, 450 F.3d at 1185 (stating that voluntary disclosure by the client waives the attorney-client privilege); Frontier Ref., Inc. v. Gorman–Rupp Co., 136 F.3d 695, 699 (10th Cir. 1998) (identifying different approaches to determine

when implied waiver arises while sitting in diversity and applying Wyoming law). The party "assert[ing] the attorney-client privilege or the work product doctrine as a bar to discovery has the burden of establishing that either or both is applicable." <u>Peat, Marwick, Mitchell & Co. v. West</u>, 748 F.2d 540, 542 (10th Cir. 1984).

"'At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.'" <u>Qwest</u>, 450 F.3d at 1186 (quoting <u>United States v. Nobles</u>, 422 U.S. 225, 238 (1975)). Work product includes opinion work product and fact work product. <u>Id.</u> An opposing party may discover fact work product, otherwise discoverable, upon a showing of substantial need and the difficulty of obtaining substantially similar evidence elsewhere. Fed. R. Civ. P. 26(b)(3)(A).

## <u>DISCUSSION</u>

The parties do not dispute that Mr. Truman—in alleging that the Orem City Defendants suppressed evidence—asserts a <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) claim against the Orem City Defendants in this case. (Mem. 1, ECF No. 53; Opp'n 2, ECF No. 60.) Mr. Truman also asserts the Orem City Defendants fabricated evidence. (Am. Compl. ¶ 514, ECF No. 38.) In response to the Motion to Quash, the Orem City Defendants indicated they sought only information regarding allegedly suppressed evidence. (Opp'n to Mot. to Quash 1-2, ECF No. 44.) In their further briefing on waiver, both parties have treated the allegations of suppressed evidence and fabricated evidence as interchangeable. (<u>E.g.</u> Mem. 1, ECF No. 53; Opp'n 2, ECF No. 60.)

## I.     Scope of the Motion

For clarity's sake, a Brady violation occurs when police officers fail to turn over exculpatory evidence to opposing counsel in a criminal case.  United States v. Bagley, 473 U.S. 667, 676 (1985).  A Giglio violation occurs when police officers fail to turn over impeachment evidence to opposing counsel in a criminal case.  Id.  Mr. Truman asserts the Orem City Defendants withheld both exculpatory evidence, (Am. Compl. ¶ 524(b), (d), (e), (f), (g), (h), (i), ECF No. 38), and impeachment evidence, (id., ¶ 524(a), (c), (d), (g)).  Attorneys frequently refer to claims about these two types of suppression as Brady claims.  Fabrication of evidence constitutes a separate constitutional violation subject to a different test than either a Brady or a Giglio violation.  Pierce v. Gilchrist, 359 F.3d 1279, 1299 (10th Cir. 2004); Pyle v. Kansas, 317 U.S. 213, 216 (1942).

The case law the Orem City Defendants rely upon to show a need to know what Mr. Yengich knew relates to Brady violations—"'[A] defendant's independent awareness of the exculpatory evidence is critical in determining whether a Brady violation has occurred.  If a [criminal] defendant already has a piece of evidence, the prosecution's disclosure of that evidence is considered cumulative, rendering the suppressed evidence immaterial.'"  (Mem. 5, ECF No. 53 (quoting United States v. Quintanilla, 193 F.3d 1139, 1149 (10th Cir. 1999))).  The Orem City Defendants do not cite any similar Tenth Circuit case law applicable to fabricated evidence.

Assertions of fabrication do not give rise to waiver of the attorney-client privilege or work-product protection because the attorney's knowledge of the fabrication does not eliminate the harm of the fabrication in the way prior knowledge of information not disclosed does.  To prove a fabrication claim, the plaintiff must show 1) the officers

fabricated the evidence, 2) the evidence was used against the plaintiff in a criminal proceeding, and 3) the fabricated evidence deprived the plaintiff of fair trial or otherwise harmed him.  See Warnick v. Cooley, 895 F.3d 746, 753 (10th Cir. 2018) (setting forth pleading requirements for a fabrication claim).

Take for example a fabricated crime lab report purporting to document the presence of a plaintiff at the scene of a crime.  That the plaintiff knows she was not at the scene of the crime does not prevent the introduction of the evidence.  Even if the plaintiff forgoes her Fifth Amendment right not to testify and testifies that she was not at the scene, her testimony does not neutralize the fabricated crime lab report.

The one case the Orem City Defendants cite for this proposition, Tennison v. City & Cty. of San Francisco, 226 F.R.D. 615, 622 (N.D. Cal. 2005), involved a § 1983 claim for suppression of exculpatory evidence and reliance on perjured testimony.  The California district court stated, "[t]o succeed, [the plaintiff] must prove not only these facts, but the lack of knowledge of such evidence on the part of his attorney and himself."  Id.  In support of this statement, the court cites only to cases involving suppression of evidence and not to any cases involving fabrication of evidence.  See id. (citing California v. Trombetta, 467 U.S. 479, 488–89, (1984) (addressing destroyed evidence); United States v. Dupuy, 760 F.2d 1492, 1502, n. 5 (9th Cir.1985) (involving nondisclosure of witnesses statements from known witnesses); United States v. Grossman, 843 F.2d 78, 85 (2d Cir.1988) (concerning failure to disclose potentially exculpatory evidence); United States v. Gaggi, 811 F.2d 47, 59 (2d Cir.1987) (regarding failure to disclose exculpatory evidence."))  This Court does not find persuasive an out-

of-circuit, district court case, lacking case law on the point of whether the plaintiff's and attorney's knowledge about fabricated evidence acts as a defense.

For all of these reasons, the Court only addresses waiver regarding withheld information, that is <u>Brady</u> violations.

## II. Summary of Arguments

The parties agree that no Tenth Circuit case exists regarding the waiver of attorney-client privilege or work product protection in a § 1983 case involving the assertion of a <u>Brady</u> claim. (Mem. 1, ECF No. 53; Opp'n 2, ECF No 60.) However, the Orem City Defendants argue that the "at-issue" waiver test set forth in <u>Seneca Insurance Company, Inc. v. Western Claims, Inc.</u>, 774 F.3d 1272, 1276–77 (10th Cir. 2014) should govern the Court's analysis of the waiver issue and point to a number of district court cases which have found that the plaintiff waived the attorney-client privilege and/or work product protection as to certain issues by asserting a <u>Brady</u> claim. (Mem. 3–15, ECF No. 53.) The Orem City Defendants argue for a broad waiver, including both fact and opinion work product. (<u>See</u> <u>id.</u>) Mr. Truman responds that the Court should not apply <u>Seneca</u> to this case because Mr. Truman does not rely on advice of counsel, that the district court cases from other circuits finding waiver where a plaintiff asserts <u>Brady</u> claims are not binding, that any waiver should be narrow in scope, and that Mr. Truman has not waived work product protection of Mr. Yengich's mental impressions and opinions. (Opp'n 2–6, ECF No. 60.)

As addressed below, the Court finds that Mr. Truman has not waived attorney-client privilege, and the Orem City Defendants have not proven their need for work product with respect to the facts that form the basis for his <u>Brady</u> claims.

### III.   AT-ISSUE WAIVER OF ATTORNEY-CLIENT PRIVILEGE

The attorney-client privilege arises when 1) a client and an attorney have a communication, 2) for the purpose of giving or receiving legal advice or discussing legal strategy, and 3) they keep that communication confidential.  In re Grand Jury Proceedings, 616 F.3d 1172, 1182 (10th Cir. 2010).

#### A. *Facts Not Protected by the Attorney-Client Privilege*

As a general rule, the attorney-client privilege does not protect facts, unless the client's communication to the attorney is the source of the facts.  See id. 1182-83 (noting the attorney-client privilege protects only client confidences and does not protect facts obtained by the attorney from third parties or facts shared by the attorney with the client).  "The privilege 'must be strictly constructed and accepted 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth.' "  Id. at 1183.

As an initial matter, the attorney-client privilege does not protect any facts in the documents Mr. Truman has withheld unless Mr. Truman disclosed those facts to Mr. Yengich, or the other attorneys on his team, in confidence and has kept them confidential.  By alleging these specific facts in his Complaint, Mr. Truman has not kept the following facts confidential:

- The measurements of the house and hallway by the first responders, where they found Mrs. Truman, and their identities;

- A 96-slide PowerPoint given to Dr. Leis;

- Evidence of and the lack of testing of gunshot residue;

- An attempt to claim or freeze insurance benefits by Janet Wagner;

- Mrs. Truman's relationship with her family and her mental state;

- A forensic consultant team's conclusion that they could not ascertain how or where Mrs. Truman was shot or Mr. Truman's location at that time;

- Evidence of Mr. Truman's call to Mrs. Truman prior to the 911 call;

- Statements from financial planner John Engh regarding the Trumans' financial situation, statements from first responders about the location of the black handled gun;

- Police reports noting Mr. and Mrs. Truman's lack of financial trouble.

Thus the attorney-client privilege does not protect any of these facts. To the extent any of the documents withheld on the basis of attorney-client privilege mention any of these facts, Mr. Truman must produce them unless the work product protection applies. Of course, Mr. Truman may redact any remaining portion of the documents that contain attorney-client communications or work product protection.

### B. Waiver Test

While the Tenth Circuit has remained silent on who bears the burden of proving waiver, this Court places the burden on the party asserting the attorney-client privilege to show it has not waived the privilege by placing it squarely at issue in the case. See In re Keeper of the Records, 348 F.3d 16, 22 (1st Cir. 2003); Weil v. Inv./Indicators, Research & Mgmt., Inc., 647 F.2d 18, 25 (9th Cir. 1981); but see In re County of Erie, 546 F.3d 222, 228 (2d Cir. 2008) ("The key to a finding of implied waiver [of the attorney-client privilege] . . . is some showing by the party arguing for a waiver that the

opposing party <u>relies</u> on the privileged communication as a claim or defense or as an element of a claim or defense.").

In <u>Seneca</u>, the Tenth Circuit addressed waiver of the attorney-client privilege and work product protection in a case applying Oklahoma law where the plaintiff put its attorney's advice at issue by invoking "advice of counsel" to support its claims in the case. 774 F.3d at 1276–78. The Tenth Circuit utilized the "at-issue" waiver test set forth in <u>Hearn v. Rhay</u>, 68 F.R.D. 574, 581 (E.D. Wash. 1975), because the Oklahoma Supreme Court had not ruled on the issue, and the parties agreed on this approach. <u>Seneca</u>, 774 F.3d at 1276. Under that test,

> "at-issue" waiver requires—
>
> (1) assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party;
>
> (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; <u>and</u>
>
> (3) application of the privilege would have denied the opposing party access to information vital to [its] defense.

<u>Id.</u> at 1276 (citations omitted & emphasis & alteration in original). Applying this test, the Tenth Circuit upheld the district court's finding that the plaintiff waived attorney-client privilege and work product protection under state law by placing its attorney's advice at issue in the case. <u>Id.</u> at 1277–78.

Before <u>Seneca</u>, both the Tenth Circuit and the Supreme Court recognized "the implied waiver of attorney-client privilege that arises when a party puts his counsel's advice in issue" under federal attorney-client privilege law. <u>United States v. Pinson</u>, 584 F.3d 972, 977 (10th Cir. 2009) (citing <u>Hunt v. Blackburn</u>, 128 U.S. 464, 470-71 (1888) & <u>Frontier</u>, 136 F.3d 699). In <u>Pinson</u>, the Tenth Circuit acknowledged that <u>Frontier</u> set

14

forth three different approaches to finding implied waiver but did not explicitly choose one.  584 F.3d at 977-78.  Instead, the court found that "[w]hen a habeas petitioner claims that he received ineffective assistance of counsel, he puts his communications between himself and his attorney directly in issue, and thus by implication waives the attorney-client privilege with respect to those communications."  Pinson, 584 F.3d at 977-78.

Frontier identified three approaches to determine whether a litigant waived the attorney-client privilege."  136 F.3d at 699.  One of these approaches provides that the client waives the attorney-client privilege "when the material to be discovered is both relevant to the issues raised in the case and either vital or necessary to the opposing party's defense of the case."  Id. (citing Hearn, 68 F.R.D. at 581 among others).  Another approach applies an automatic waiver rule, implying a waiver automatically upon assertion of a claim making privileged material relevant.  Id. (citing FDIC v. Wise, 139 F.R.D. 168-170-71 (D. Colo. 1991) among others).  According to the third approach, courts should only find waiver of the attorney-client privilege when the client puts the attorney's advice directly at issue.  Id. (citing Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 863-64 (3d Cir. 1994)).

In Frontier, the Tenth Circuit declined to apply the automatic waiver rule because "it has been roundly criticized by the circuits, does not adequately account for the importance of the attorney-client privilege to the adversary system, and is more applicable to constitutional, rather than attorney-client privileges."  Frontier, 136 F.3d at 700.  The Orem City Defendants do not argue for application of the automatic waiver

rule either.  (Mem. 1, ECF No. 53.)  Thus the Court sees no basis to apply the automatic

waiver rule.

Mr. Truman argues for the Court to apply the third approach to waiver, finding

waiver only where the client "place[s] his and his counsel's knowledge squarely at

issue" as in cases where a client relies on advice of counsel.  (Opp'n 2, ECF No 60

(quoting <u>Jackson v. City of Chicago</u>, No. 03 C 8289, 2006 WL 2224052, *7 (N.D. Ill. July

31, 2006) (unpublished).))  Notably, the Second Circuit requires that "a party must <u>rely</u>

on privileged advice from his counsel to make his claim or defense" before a court can

find a waiver of the attorney-client privilege.  <u>Erie</u>, 546 F.3d at 229 (emphasis in

original).  The Third Circuit and Seventh Circuit's case law accords with this same

requirement.  <u>Rhone-Poulenc</u>, 32 F.3d at 863-64 (finding waiver appropriate only where

"the client puts the attorney's advice in issue"); <u>Jackson</u>, 2006 WL 2224052, *7 ("The

attorney-client privilege is waived when the client's claim or defense puts the attorney's

advice at issue, not merely by placing the factual knowledge of the attorney at issue.")

(citing <u>Garcia v. Zenith Elecs. Corp.</u>, 58 F.3d 1171, 1175 (7th Cir. 1995)).  Indeed, the

Tenth Circuit's only opinion on federal attorney-client privilege waiver also accords with

finding waiver when the client puts the advice squarely at issue.  <u>Pinson</u>, 584 F.3d at

977-78.  Perhaps most importantly, the Supreme Court stated:  "Balancing <u>ex post</u> the

importance of the information against client interests, . . ., introduces substantial

uncertainty into the privilege's application.  For just that reason, we have rejected use of

a balancing test in defining the contours of the privilege."  <u>Swidler & Berlin v. United</u>

<u>States</u>, 524 U.S. 399, 409 (1998); <u>see</u> <u>also</u> <u>Ross v. City of Memphis</u>, 423 F.3d 596, 604

n.4 (6th Cir. 2005) (noting "<u>Swidler & Berlin</u>'s rationale is also fatal to the reasoning of

Hearn"). For these reasons, the Court thinks the Tenth Circuit would likely adopt this third approach.

Nonetheless, like the court in <u>Frontier</u>, 136 F.3d at 701, this Court "need not choose between the remaining two general approaches because [the defendant] failed to demonstrate its entitlement to the privileged materials under the more liberal of the two approaches to waiver." The more liberal approach mentioned is that discussed in <u>Seneca</u> applying the <u>Hearn</u> factors.

### C. Application of the *Seneca/Hearn* test

To demonstrate why even the more liberal approach does not result in a waiver of the attorney-client privilege, the Court will now apply each of the <u>Hearn</u> factors to determine whether "at-issue" waiver of the attorney-client privilege occurred in this case under that test.

#### 1. Affirmative Act

The Orem City Defendants contend the filing of this lawsuit constitutes Mr. Truman's affirmative act. (Mem. 4, ECF No. 53.) The first prong of the <u>Hearn</u> test set forth in <u>Seneca</u> requires that assertion of the privilege by a party resulted from some affirmative act by that party, such as filing suit. <u>Seneca</u>, 774 F.3d at 1276. In this case, Mr. Truman brought a § 1983 action against the Orem City Defendants premised in part on <u>Brady</u> claims. The Orem City Defendants seek privileged information to defend against those claims to show that either they did disclose the relevant information or Mr. Truman's counsel knew of the allegedly withheld information. Hence the affirmative action by Mr. Truman of bringing these claims resulted in the Orem City Defendants seeking privileged materials under the "at-issue" waiver test.

Mr. Truman does not contest the first prong of the <u>Hearn</u> test.  (Opp'n 3-4, ECF No.60.)  Indeed, Mr. Truman's assertion of the attorney-client privilege and work product protection results directly from these claims, which he chose to bring as part of his lawsuit.   <u>See</u> <u>accord</u> <u>Cannon v. Polk Cty.</u>, No. 3:10-CV-00224-HA, 2013 WL 1840343, at *3 (D. Or. Apr. 30, 2013) (unpublished) ("As to the first prong of the test, plaintiff has asserted the attorney-client privilege and work product privilege as a result of some affirmative act—specifically, the filing of the present lawsuit.").  Accordingly, the Court finds the affirmative act prong of the "at-issue" waiver test met.

### 2.  <u>Protected Information at Issue</u>

The Orem City Defendants contend Mr. Truman put "his knowledge, the knowledge of his counsel, and their communications" on the following topics directly at issue:

- Measurements of the house and hallway where Mrs. Truman was found;

- The location of Mrs. Truman's body;

- Mr. Truman's finances;

- Mr. Truman's call to Mrs. Truman prior to the 911 call;

- Mr. Truman's inconsistent statements and threatening behavior the night of the shooting;

- The location of the black-handled gun and shell casing;

- Mrs. Truman's relationship with her family and her mental health;

- Testing of the gunshot residue.

(Mem. 6–9, ECF No. 53.)  Mr. Truman does not address the second prong of the <u>Hearn</u> test.  (Opp'n 3-4, ECF No.60.)

The Court finds Mr. Truman's <u>Brady</u> claims put only one category of protected attorney-client information at issue because the information in dispute constitutes facts, not legal advice or strategy. Mr. Truman alleges the Orem City Defendants violated his constitutional rights by suppressing exculpatory and impeachment evidence, specifically not giving that evidence to his attorney in his first criminal case. To succeed on his <u>Brady</u> claims, Mr. Truman must not only prove these facts, but also must show that neither he nor his counsel knew about the evidence. "[A] defendant's independent awareness of the exculpatory evidence is critical in determining whether a <u>Brady</u> violation has occurred. If a defendant already has a particular piece of evidence, the prosecution's disclosure of that evidence is considered cumulative, rendering the suppressed evidence immaterial." <u>Quintanilla</u>, 193 F.3d at 1149.

What Mr. Truman's attorney advised regarding the allegedly withheld evidence or whether Mr. Truman sought advice regarding the allegedly withheld evidence has no bearing on the <u>Brady</u> claim. Whether the attorney said we will argue X or we will not argue X matters not to a <u>Brady</u> claim. Rather all that matters is that the attorney knew about X. Thus Mr. Truman has not waived his attorney-client privilege as to legal advice or legal strategy on any of these topics.

Further, as noted above, to the extent Mr. Truman's counsel obtained knowledge of facts from anyone other than Mr. Truman, the attorney-client privilege does not protect those facts from disclosure.

Thus the only potential attorney-client privileged information at issue are those facts shared by Mr. Truman with his counsel in confidence. Mr. Truman has already waived attorney-client privilege as to the specific facts alleged in his Complaint by

reciting them in his Complaint. The Court does find Mr. Truman put the following facts at issue since he claims neither he nor his attorney knew them before the first trial:

- The inaccurate measurements of the house and hallway where Mrs. Truman was found and the identity of who made them;

- A 96-slide PowerPoint given to Dr. Leis;

- Evidence of and the lack of testing of gunshot residue;

- An attempt to claim or freeze insurance benefits by Janet Wagner;

- Mrs. Truman's relationship with her family and her mental state;

- A forensic consultant team's conclusion that they could not ascertain how or where Mrs. Truman was shot or Mr. Truman's location at that time;

- Evidence of Mr. Truman's call to Mrs. Truman prior to the 911 call;

- Statements from financial planner John Engh regarding the Trumans' financial situation, statements from first responders about the location of the black handled gun, and any other statements Mr. Truman contends were withheld;

- Police reports noting Mr. and Mrs. Truman's lack of financial trouble.

To the extent, Mr. Truman shared information about any of these facts with Mr. Yengich in confidence, meaning they have not already been disclosed, these facts arguably are protected information at issue. This list is smaller and different that the Orem City Defendants' list as it relates only the allegedly undisclosed facts and does not include allegedly fabricated facts. Additionally, Quintanilla, 193 F.3d at 1149, only supports the relevance of the attorney and the client's knowledge prior to the end of the

trial.  Thus the documents on the privilege log following the first trial, after October 2014 are not at issue.

Because Mr. Truman's <u>Brady</u> claims place Mr. Yengich's knowledge prior to the close of trial at issue, the Court finds the second prong of the "at-issue" waiver test met as to these facts.

### 3.  <u>Information Vital to Defense</u>

The third prong of the <u>Hearn</u> test finds the attorney-client privilege waived if application of the privilege would deny "the opposing party access to information vital to [its] defense."  <u>Seneca</u>, 774 F.3d at 1276.  The Orem City Defendants contend that all of this information is vital to their defense.  (Mem. 6–9, ECF No. 53.)  Mr. Truman argues that other sources can provide the information sought from Mr. Yengich since the Orem City Defendants know what disclosures they made (or did not make) to Mr. Truman and his counsel.  (Opp'n 3–4, ECF No. 60.)  The Orem City Defendants contend that because Mr. Truman's attorney's knowledge of allegedly withheld facts presents a defense to the § 1983 claims, that knowledge is vital to their defense.

The privileged information that the Orem City Defendants seek is not vital to their defense.  As addressed above, if Mr. Yengich knew about the information and evidence that Mr. Truman claims his new counsel only discovered after his first trial, then the Orem City Defendants can defeat the <u>Brady</u> claims.  For example, if Mr. Yengich knew Dr. Leis had relied on incorrect dimensions of the Truman home and the location of Mrs. Truman's body, the Orem City Defendants can use such evidence to defeat Mr. Truman's <u>Brady</u> claims on this point.  Similarly, if Mr. Yengich knew Mr. Engh had stated that Mr. Truman had no financial motivation to kill Mrs. Truman or that Mrs.

Truman's family really did not have a lot of contact with Mrs. Truman, the Orem City Defendants can likewise use such evidence to defeat Mr. Truman's <u>Brady</u> claim on those issues, as well.  <u>See</u> <u>Quintanilla</u>, 193 F.3d at 1149; <u>Cannon</u>, 2013 WL 1840343, at *3.  Additionally, if Mr. Yengich had the phone records showing Mr. Truman's phone call to Mrs. Truman before her shooting went to voicemail or knew that the Orem City Defendants had not completed the gun residue testing, the Orem City Defendants can use that evidence to help defeat Mr. Truman's <u>Brady</u> claims on these points too.  However, all of that evidence reflects facts not protected by the attorney-client privilege <u>unless</u> told to Mr. Yengich by Mr. Truman in confidence.  At this point, the Orem City Defendants have every right to depose Mr. Truman under oath about what he knew about these facts and when without inquiring into whether he told Mr. Yengich.  If Mr. Truman knew of these facts, the Orem City Defendants have their defense, and Mr. Yengich's knowledge becomes irrelevant to their defense.  If Mr. Yengich knew these facts, but Mr. Truman did not or learned of them from his attorney, they are not protected by the attorney-client privilege.  "Facts are discoverable, the legal conclusions regarding those facts are not.  A litigant cannot shield from discovery the knowledge it possessed by claiming it has been communicated to a lawyer; nor can a litigant refuse to disclose facts simply because that information came from a lawyer."  <u>Rhone-Poulenc</u>, 32 F.3d at 864.

Accordingly, this Court finds the third prong of the "at-issue" waiver test not met and finds Mr. Truman has not waived the attorney-client privilege as to those issues implicated by his <u>Brady</u> claims.  As a result, whether the Court applies the <u>Hearn</u> test or the advice of counsel test, Mr. Truman has not waived his attorney-client privilege.

## IV. WAIVER OF WORK PRODUCT PROTECTION

Nonetheless, Mr. Truman claims work product protection—not attorney-client privilege—for the majority of documents sought by the Orem City Defendants. (See Highlighted Priv. Log, ECF No. 53-2.) The Orem City Defendants argue that Mr. Truman waived work product protection with respect to facts and opinions bearing on his Brady claims. (Mem. 11–15, ECF No. 53.) While arguing that Mr. Truman waived opinion work product protection as to all Brady claims (Reply 4, ECF No. 61), the Orem City Defendants focus their opinion work product waiver argument on Mr. Truman's allegations concerning his inconsistent statements and threatening behavior the night of the shooting and his allegation that the Orem City Defendants withheld information concerning Mrs. Truman's mental state and relationship with her family, arguing that these allegations place Mr. Yengich's opinions and impressions on these topics squarely at issue. (Mem. 13–15, ECF No. 53.) They claim with these allegations Mr. Truman implies that Mr. Yengich misunderstood important opinions and mental impressions thereby placing Mr. Yengich's opinions and mental impressions on those topics at issue in this case. (Id.) Mr. Truman does not address waiver of fact work product separately but argues that no waiver of opinion work product occurred. (Opp'n 5–6, ECF No. 60.) The Court DENIES the Orem City Defendants' Motion because they failed to meet their burden as to the work product materials.

Regarding Mr. Truman's alleged inconsistent statements and threatening behavior the night of the shooting, these allegations raise questions of fabrication, not withholding, of evidence. (Am. Compl. ¶¶ 408, 409, 521, ECF No. 38.) As set forth above, fabrication claims do not implicate Mr. Truman or Mr. Yengich's knowledge the

way <u>Brady</u> claims do.  Therefore, these fabrication claims do not support a claim for an exception to the work product protection.

### A. Applicable Test

The work product protection shields 1) information, 2) prepared by the attorney or his agents, 3) in anticipation of litigation and trial.  <u>In re Grand Jury</u>, 616 F.3d at 1184; Fed. R. Civ. P. 26(b)(3).  When it applies, the work product protection sweeps more broadly than the attorney-client privilege.  <u>In re Grand Jury</u>, 616 F.3d at 1184 n. 23. Rule 26(b)(3) of the Federal Rules of Civil Procedure provides that a party may discover documents "prepared in anticipation of litigation or for trial" upon a showing that it "has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain the substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3)(A)(ii).  The work product doctrine embodied in Rule 26 "protects materials prepared for <u>any</u> litigation or trial as long as they were prepared by or for a party to the subsequent litigation."  <u>F.T.C. v. Grolier Inc.</u>, 462 U.S. 19, 25 (1983) (emphasis in original).

The court in <u>Seneca</u>, 774 F.3d at 1278, noted that the parties failed to distinguish between the attorney-client privilege and work-product doctrine despite their differences and therefore did not opine on any distinctions in the application of the <u>Hearn</u> test.  In <u>Frontier</u>, 136 F.3d at 704, the Tenth Circuit found the district court erred in applying the <u>Hearn</u> test to work product material and instead applied the necessity test set out in Federal Rule 26(b)(3).  The Orem City Defendants do not address—and the Court can find no reason—why <u>Frontier</u>'s ruling would not bind this Court.

The Orem City Defendants claim a client can waive the work product protection like the attorney-client privilege and cite Qwest, 450 F.3d at 1186. (Mem. 11, ECF No. 53.) Qwest does note that a client can waive the work product protection, but the Tenth Circuit recognized that waiver occurs by "production of work-product material during discovery." 450 F.3d at 1186. No one argues Mr. Truman produced the work-product material during discovery. Notably, the Qwest court cites the analysis in Frontier as an example of where a party can seek production of fact work product under the provisions of Federal Rule 26(b)(3) as distinct from waiver. Id.

Furthermore, the necessity test, established by the Federal Rules, gets to the heart of the issue the Orem City Defendants have identified—the evidence needed for their defense remains protected by the work product protection. The Rules set forth the circumstances under which that need trumps the work product protection. There is no need to create or apply a different test.

Given the Tenth Circuit's finding application of the at issue waiver test to work product error in Frontier, and its citation of Frontier's treatment of the issue with approval in Qwest, and the good "fit" of the necessity test to this circumstance, this Court applies the work product discovery rule set forth in Federal Rule 26(b)(3) to the material at issue.

### B.  Application of the Necessity Test

The requesting party bears the burden to show both a substantial need for the work product and the lack of substantially equivalent evidence elsewhere. Fed. R. Civ. P. 26(b)(3)(A)(ii). The Orem City Defendants have shown a substantial need for materials relating to Mr. Truman's Brady claims, specifically:

- The inaccurate measurements of the house and hallway where Mrs. Truman was found and the identity of who made them;

- A 96-slide PowerPoint given to Dr. Leis;

- Evidence of and the lack of testing of gunshot residue;

- An attempt to claim or freeze insurance benefits by Janet Wagner;

- Mrs. Truman's relationship with her family and her mental state;

- A forensic consultant team's conclusion that they could not ascertain how or where Mrs. Truman was shot or Mr. Truman's location at that time;

- Evidence of Mr. Truman's call to Mrs. Truman prior to the 911 call;

- Statements from financial planner John Engh regarding the Trumans' financial situation, statements from first responders about the location of the black handled gun, and any other statements Mr. Truman contends were withheld;

- Police reports noting Mr. and Mrs. Truman's lack of financial trouble.

If Mr. Yengich knew of these pertinent facts underlying Mr. Truman's <u>Brady</u> claims, then the Orem City Defendants can use that knowledge to defeat those claims. <u>See Quintanilla</u>, 193 F.3d at 1149.

However, the Orem City Defendants never addressed the availability of the information elsewhere because they sought application of the <u>Hearn</u> test rather than the Federal Rule 26(b)(3) necessity test. Without a showing that substantially equivalent evidence is not available elsewhere, the Court cannot find a basis for disclosure under Federal Rule 26(b)(3).

For example, if Mr. Yengich spoke to Mr. Engh in preparation for trial, and Mr. Engh repeated his statements about the Trumans' financial condition to Mr. Yengich, the Orem City Defendants could use that work product as a defense to any claim for the withholding of Mr. Engh's statements to the police. However, presumably the Orem City Defendants could contact Mr. Engh and ask him if he talked with Mr. Truman or Mr. Truman's legal team about the Trumans' financial condition in connection with the first criminal case. As the Supreme Court noted, "production might be justified where the witnesses are no longer available or can be reached only with difficulty." Hickman v. Taylor, 329 U.S. 495, 511 (1947). However, where the Orem City Defendants have not shown that substantially equivalent evidence is unavailable elsewhere, the Court declines to order production of Mr. Yengich's work product.

### C. Opinion Work Product

The Orem City Defendants also specifically request opinion work product. (Mem. 12-15, ECF No. 53.) Within the umbrella of work product protection, opinion work product—which reflects the mental impressions, conclusions, and legal theories of an attorney—generally receives greater protection than fact work product. See Qwest, 450 F.3d at 1186 ("Work product can be opinion work product, which some courts have held to be absolutely privileged, or non-opinion work product, i.e., fact work product, which may be discoverable under appropriate circumstances."); Anaya v. CBS Broad., Inc., 251 F.R.D. 645, 651 (D.N.M. 2007) ("Ordinary work product generally refers to materials that are gathered at the request of an attorney in anticipation of litigation. This type of work product receives less protection than opinion work product. Opinion work product is, basically, the mental impressions of the attorney." (quoting Sinclair Oil Corp. v.

<u>Texaco, Inc.</u>, 208 F.R.D. 329, 334 (N.D. Okla. 2002)).  Federal Rule 26(b)(3) provides

that a court "must protect against disclosure of the mental impressions, conclusions,

opinions, or legal theories of a party's attorney or other representative concerning the

litigation."  Fed. R. Civ. P. 26(b)(3)(B).

 The Orem City Defendants have failed to show a substantial need for the opinion

work product reflecting Mr. Yengich's mental impressions, conclusions, opinions, and

legal theories.  For example, Mr. Yengich's mental impressions and opinions concerning

Mr. Engh are not relevant to Mr. Truman's <u>Brady</u> claims.  What is relevant is what Mr.

Yengich and Mr. Truman knew about Mr. Engh, and in particular, whether they knew

Mr. Engh believed Mr. Truman lacked a financial motive to kill his wife.  In addition,

whether Mr. Yengich knew that the Orem City Defendants did not test the gunshot

residue presents an objective inquiry—either he knew they did so or he did not know—

and making that determination does not require inquiry into his mental impressions and

opinions.

 Further, Mrs. Truman's family relationships and mental state do not directly

implicate any of Mr. Yengich's legal opinions and conclusions.  Mr. Yengich is an

attorney, not a psychiatrist or doctor qualified to opine on the reasons that may have

motivated Mr. Truman's behavior the night of the shooting.  Likewise, Mr. Truman's

<u>Brady</u> claims do not implicate Mr. Yengich's opinions as to Mrs. Truman's family

relationship and mental state.  Only Mr. Yengich's knowledge of such information is

even relevant to Mr. Truman's <u>Brady</u> claims.  Specifically, if Mr. Yengich knew about

these facts and did not raise them at trial, the knowledge of the facts proves the Orem

City Defendants' defense to the <u>Brady</u> claim.  Whether Mr. Yengich made a strategic

choice not to put on those facts or simply misinterpreted those facts does not add or detract from the Orem City Defendants' defense. Simply put, what Mr. Yengich objectively knew about the facts and evidence relating to Mr. Truman's Brady claims has relevance to the Orem City Defendants' defense of those Brady claims, not his subjective opinions, mental impressions, and legal strategy. Accordingly, the Court finds no basis to compel production of Mr. Yengich's opinion work product.

## V. PRIVILEGE LOG

The Orem City Defendants noted that Mr. Truman provided a deficient privilege log, particularly objecting to the lack of identification of subject matter. (Mem. 1, 3, ECF No. 53.) As noted above, Mr. Truman bears the burden of establishing the applicability of either the attorney-client privilege or work product protection. Peat, Marwick, 748 F.2d at 542. Mr. Truman's privilege log is confusing. (See Priv. Log, ECF No. 53-1.) In some cases, whether Mr. Truman claims simply the attorney-client privilege or also the work product protection over a document remains ambiguous. (Cf. id. at doc. #s YENGICH003545, 3561, 3565, 3576, and 4362 with Highlighted Priv. Log at same doc. #s, ECF No. 53-2.) Further, in some instances the file name would appear to supply sufficient indication of the subject matter to allow review, for example where the file name is "Presentence Report" and it contains two documents listed as "Correspondence with client" and "Handwritten note." (See e.g., Priv. Log at doc. #s YENGICH003597, 3607, ECF No. 53-1.) But in other instances, the file name does not provide sufficient guidance as to subject matter to allow the Orem City Defendants or the Court to see the basis for assertion of privilege, such as where the file name is "Miscellaneous" and the document title is "Draft letter to Truman family with handwritten

notes/revisions" or "Handwritten attorney notes". (<u>See</u> <u>e.g.</u>, <u>id.</u> at doc. #s YENGICH004360, 4380, 4389, 4390, 4392.) Additionally, in the current procedural posture (the underlying case being final) some descriptions need to include more information. For example, when a description states the document relates to "witnesses," the description should include the specific witnesses' names, and when it relates to an expert, it should include the expert's identity. (<u>See</u> <u>e.g.</u>, YENGICH002737, 2738, 4187, 4189, 4194, 4356, 4643.) The Court also notes that many of the documents lack a specific author's name, such as the above "Handwritten note" or "Handwritten attorney note". (<u>See</u> <u>e.g.</u>, <u>id.</u> at doc. #s YENGICH004360, 4380, 4389, 4390, 4392.) Without identification of the author, the privilege log falls short of the requirements of Federal Rule 26(b)(5)(A). In addition, where the log identifies a non-privileged or protected document with handwriting or highlighting on it, the log entry should specify the document and identify where else in the production or in public the Orem City Defendants can locate that document, i.e. by document number for produced documents. (<u>See</u> <u>e.g.</u>, <u>id.</u> at doc. #s YENGICH002742, 2776, 3039.)

With the tests this Court intends to apply outlined and the issues focused, counsel for Mr. Truman must now to supplement the privilege log to include the information necessary to allow the Orem City Defendants to look at the log and understand the basis for the privilege or protection assertion for each document.

## ORDER

Based on the above analysis, the Court enters the following Order:

1.     The Court GRANTS in part and DENIES in part the remaining portion of the Motion to Quash (ECF No. 39).

2.      The Court DENIES the portion of the Motion to Quash that applies to non-privileged or protected documents.  Mr. Truman's counsel must review withheld documents to determine whether they contain non-privileged or non-protected material as outlined in this Order.  If they do contain such material, Mr. Truman's counsel must produce all portions of documents containing such material and may redact portions of documents that remain protected.  The privilege log should include all such redacted documents, with the bases for redaction discussed above.  Mr. Truman's counsel must complete these actions by March 22, 2019.

3.      The Court DENIES the portion of the Motion to Quash that seeks to avoid production of a privilege log.  Mr. Truman's counsel must produce to the Orem City Defendants a supplemental privilege log that includes sufficient detail to allow the Orem City Defendants to perceive clearly the basis for the privilege or protection claims by March 22, 2019.

4.      The Court GRANTS the remainder of the Motion to Quash.

DATED this 22nd day of February, 2019.

_Evelyn J. Furse_
Magistrate Judge Evelyn J. Furse
U.S. District Court