IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| CONRAD TRUMAN,<br><br>    Plaintiff,<br><br>v.<br><br>CRAIG JOHNSON,<br><br>    Defendant. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>Case No. 2:17-CV-775-TS-CRM<br><br>District Judge Ted Stewart |

Defendant Craig Johnson moves for summary judgment on Plaintiff Conrad Truman's 42 U.S.C. § 1983 claim for violation of his Fourth and Fourteenth Amendment rights.[1] Johnson argues that issue preclusion bars the claim. For the reasons below, the Court will grant the motion.

I. BACKGROUND

In 2014 a jury in Utah state court convicted Truman of murder and obstruction of justice after his wife Heidy died from a gunshot wound inflicted at their home in 2012. The medical examiner, Dr. Leis, had originally given the manner of death as undetermined, but changed it to homicide after receiving information from police and prosecutors that included a diagram of the home. Based on the measurements on the diagram, Dr. Leis concluded that Heidy could not have killed herself. He explained that if Heidy had been standing where Truman claimed she was when she was shot, she could not have then walked across the room to where her body was found. At

---

[1] Docket No. 132.

1

trial, the evidence against Truman included diagrams of the home and testimony by Dr. Leis that the location where Heidy collapsed ruled out suicide.

Soon after Truman's conviction, new defense counsel discovered significant errors in the measurements of the home that the prosecution had used throughout the investigation and at trial. The room in which Heidy had been shot had been portrayed as much larger than it really was; in reality, instead of having to walk several feet across the room before collapsing, Heidy would have collapsed in approximately the same location where she was shot. Upon reviewing the corrected measurements and visiting the house himself, Dr. Leis changed the official manner of death back to undetermined because he believed it was no longer possible to rule out suicide.

Truman moved for a new trial on various theories including prosecutorial misconduct and newly discovered evidence ("Motion for New Trial"),[2] for which an evidentiary hearing was held in 2016.[3] The state court granted a new trial on the basis of material errors in measurements of the home that, if discovered and corrected, would have allowed the jury to consider the theory of suicide ("Order Granting New Trial").[4]

Before the second trial, Truman filed a "Motion to Dismiss for Outrageous Government Conduct" ("Motion to Dismiss").[5] Truman argued, in part, that the prosecution had knowingly presented false evidence to the jury and Dr. Leis in the first trial. However, the court found no deliberate deceit and denied the motion ("Order Denying Motion to Dismiss").[6] The jury in the second trial acquitted Truman in February 2017.

---

[2] Docket Nos. 135-2–135-6.
[3] Docket Nos. 132-2.
[4] Docket No. 132-3.
[5] Docket No. 132-4.
[6] Docket No. 132-5.

In July 2017 Truman brought this § 1983 action against police, local government entities, and Johnson, who was the prosecutor at the first trial.[7] As relevant here, the sixth cause of action alleged that Johnson and police violated Truman's Fourth and Fourteenth Amendment rights by fabricating inculpatory evidence and withholding exculpatory evidence.[8] Truman claimed that Johnson and police fabricated the scene diagrams that were presented to the medical examiner and used throughout the investigation and the first trial, as well as failed to disclose, hid, or destroyed evidence about the faulty measurements.[9]

On November 20, 2018, this Court dismissed the claims against Johnson based on qualified immunity.[10] The Court granted summary judgment for the other defendants in part because earlier state-court decisions barred the claims under the doctrine of issue preclusion.[11]

On appeal, the Tenth Circuit reversed the dismissal of the fabrication of evidence claim against Johnson, finding that qualified immunity did not apply.[12] The court affirmed summary judgment for the officers, explaining that Truman had forfeited his argument against preclusion in the district court and did not argue for plain error review on appeal. The court stated:

> Although the district court granted summary judgment to the police officers on Mr. Truman's fabrication of evidence claim against them on three separate grounds, we need only review the issue preclusion ground to affirm the district court. The district court found the fabrication of evidence claim was barred because the state court previously determined the allegedly fabricated evidence was not intentionally inaccurate.

---

[7] Compl., Docket No. 2; Am. Compl., Docket No. 35; Second Am Compl., Docket No. 38.

[8] Second Am. Compl. ¶¶ 512–37.

[9] *Id.* ¶¶ 520, 524(g), 525.

[10] Docket No. 70.

[11] Docket No. 114. The order also dismissed the claims against the Orem City Police Department and the Orem City Attorney's Office.

[12] *Truman v. Orem City*, 1 F.4th 1227 (10th Cir. 2021).

> We need not reach the merits of this argument because Mr. Truman forfeited it by failing to argue in the district court that issue preclusion does not bar his claim because the state court proceedings did not result in a judgment on the merits.[13]

In a footnote, the Tenth Circuit stated:

> This finding may have a preclusive effect on the fabrication of evidence claim against the prosecutor. But that issue was not presented in the prosecutor's appellate briefing, and since we do not even reach the merits of it as to the police officers, we decline to do so as to the prosecutor.[14]

Back in this Court once more, Johnson moves for summary judgment on the only remaining claim: that he knowingly used the erroneous scene diagrams against Truman in the first trial.[15] Johnson argues that issue preclusion bars this claim as it barred Truman's claims against police.

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[16] In considering whether a genuine dispute of material fact exists, the court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[17] The court construes all facts in the light most favorable to the non-moving party and makes all reasonable inferences in its favor.[18]

---

[13] *Id.* at 1241–42 (additional footnote omitted).

[14] *Id.* at 1242 n.11.

[15] Docket No. 132.

[16] Fed. R. Civ. P. 56(a).

[17] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[18] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

III.  DISCUSSION

Johnson moves for summary judgment on the single remaining claim: that he violated Truman's constitutional rights by presenting fabricated evidence. Because knowledge of falsity is essential to a fabrication of evidence claim and the state court already found that Johnson did not know the measurements were false, Truman cannot prevail on his claim.

A. Standard for Issue Preclusion

In *Allen v. McCurry*, the United States Supreme Court held that collateral estoppel (issue preclusion) precludes relitigation in § 1983 actions of issues previously decided by state courts.[19] "[C]ollateral estoppel not only reduce[s] unnecessary litigation and foster[s] reliance on adjudication, but also promote[s] the comity between state and federal courts that has been recognized as a bulwark of the federal system."[20] The Court held that federal courts must "give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so."[21]

In accordance with *Allen*, the Tenth Circuit applies state preclusion rules to determine the preclusive effect of state-court judgments.[22] Under Utah law, "once a party has had his or her day in court and lost, he or she does not get a second chance to prevail on the same issues."[23] Preclusion under Utah law requires four elements:

> (i) the party against whom issue preclusion is asserted must have been a party to or in privity with a party to the prior adjudication; (ii) the issue decided in the prior adjudication must be identical to the one presented in the instant action; (iii) the

---

[19] 449 U.S. 90, 104–05 (1980).

[20] *Id.* at 95–96.

[21] *Id.* at 96.

[22] *Cook v. Aagard*, 547 F. App'x 857, 859 (10th Cir. 2013) ("The preclusive effect in federal court of a state judgment is governed by the state's preclusion rules.").

[23] *Buckner v. Kennard*, 2004 UT 78, ¶ 12, 99 P.3d 842.

issue in the first action must have been completely, fully, and fairly litigated; and (iv) the first suit must have resulted in a final judgment on the merits.[24]

B. Application

Johnson contends that Truman cannot prove fabrication of evidence because the state court already decided one of the claim's elements—knowledge—against Truman. The Tenth Circuit set forth the substantive standard for a § 1983 fabrication of evidence claim as follows:

> The constitutional right at issue in this case is Mr. Truman's due process right not to be deprived of liberty as a result of the fabrication of evidence by a government officer. To rise to the level of a constitutional violation, a plaintiff must assert a causal connection between the fabrication of evidence and the deprivation of liberty. Thus, to state a fabrication of evidence claim, a plaintiff must allege (1) the defendant knowingly fabricated evidence, (2) the fabricated evidence was used against the plaintiff, (3) the use of the fabricated evidence deprived the plaintiff of liberty, and (4) if the alleged unlawfulness would render a conviction or sentence invalid, the defendant's conviction or sentence has been invalidated or called into doubt. Although there is some disagreement over what degree of intent the officer must have, he necessarily must possess knowledge of the evidence's falsity.[25]

Johnson argues that the Order Granting New Trial and the Order Denying Motion to Dismiss preclude Truman's claim. This Court agrees that the Order Denying Motion to Dismiss precludes the claim so the Court need not address the Order Granting New Trial.

> 1. *The party against whom issue preclusion is asserted must have been a party to or in privity with a party to the prior adjudication*

Johnson asserts issue preclusion against Truman, who was a party to the prior criminal case, satisfying this element.

---

[24] *Oman v. Davis Sch. Dist.*, 2008 UT 70, ¶ 29, 194 P.3d 956 (quoting *Collins v. Sandy City Bd. of Adjustment*, 2002 UT 77, ¶ 12, 52 P.3d 1267).

[25] *Truman*, 1 F.4th at 1236 (internal quotation marks and citations omitted).

> 2. *The issue decided in the prior adjudication must be identical to the one presented in the instant action*

For an issue to be "identical" so as to give a prior proceeding preclusive effect, the issue must have been "essential" to the resolution of the prior proceeding.[26] Utah Courts have adopted the Restatement (Second) of Judgments on this point,[27] which explains:

> If issues are determined but the judgment is not dependent upon the determinations, relitigation of those issues in a subsequent action between the parties is not precluded. Such determinations have the characteristics of dicta, and may not ordinarily be the subject of an appeal by the party against whom they were made. In these circumstances, the interest in providing an opportunity for a considered determination . . . outweighs the interest in avoiding the burden of relitigation.[28]

Relatedly, courts should not apply issue preclusion where a difference in the burden of proof between the proceedings could realistically affect the outcome—generally, where "[t]he party against whom preclusion is sought had a significantly heavier burden of persuasion with respect to the issue in the initial action than in the subsequent action."[29]

The prosecution's knowledge of the errors was a central issue on Truman's Motion to Dismiss.[30] Truman offered two main facts to prove that the prosecution knew of the erroneous

---

[26] *Oman*, 2008 UT 70, ¶ 31 (adopting Restatement (Second) of Judgments § 27 (1982) (imposing requirement that "the determination is essential to the judgment" for issue preclusion to apply)); *cf. Allen*, 449 U.S. at 94 ("Under collateral estoppel, once a court has decided an issue of fact or law *necessary to its judgment*, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.") (emphasis added).

[27] *Oman*, 2008 UT 70, ¶ 31.

[28] Restatement (Second) of Judgments § 27 cmt. h.

[29] Restatement (Second) of Judgments § 28(4); *see, e.g., Helvering v. Mitchell*, 303 U.S. 391, 397 (1938) (explaining that acquittal on a criminal charge requiring proof beyond a reasonable doubt does not preclude a later civil action); *Gressman v. State*, 2013 UT 63, ¶ 41, 323 P.3d 998 (holding that a decision vacating a conviction based on newly discovered evidence did not dictate the outcome of a later proceeding to establish factual innocence because granting a new trial required only a reasonable likelihood that the defendant would have obtained a different result at trial while a factual innocence claim requires affirmative proof of innocence by clear and convincing evidence); *see also* Restatement (Second) of Judgments § 28 cmt. f.

[30] Docket No. 132-4 at 9–32.

measurements. First, prosecutors (including Johnson) had visited the scene multiple times, which Truman argued would certainly have informed them that the area was very small and Heidy could not possibly have traveled far after being shot.[31] Second, members of the prosecution team (including Johnson) were present at a scene re-enactment, photos of which depict the small size of the room and show Heidy's body lying not on the far side of the room but mere inches from where Truman said she was shot.[32] Truman also pointed out that at least three different diagrams were disclosed that all contained incorrect measurements, sometimes different incorrect measurements; the prosecution claimed that the absence of notes, reports, and drafts by law enforcement of their measurements and diagrams was normal procedure while Truman insisted it was not; and there was inconsistent testimony about who performed the measurements of the crime scene and the prosecution called off various witnesses who could have testified about it.[33]

In its Order Denying Motion to Dismiss, the state court rejected Truman's interpretation of these events as evidence of deceit and found that Truman had not shown knowledge of the errors:

> [The] Court previously noted a problem with inaccurate measurements being listed on the crime scene diagram and noted the error was due more to ineptitude and carelessness by whomever did the measurements than anything. The attorneys in the case were justified in relying on something as seemingly routine as a measurement.
> . . .
> Just because something was wrong does not mean the prosecutors or police were being deceitful.
> . . .
> [T]he State's comments and activities regarding Dr. Leis were in the open and not deceitful.
> . . .
> [T]here is not persuasive evidence of misconduct.
> . . .

---

[31] *Id.* at 21–22.

[32] *Id.* at 22–23.

[33] *Id.* at 23–33.

> The defense *ex-cathedra* declaration [that] the State presented 'knowingly false' information to Dr. Leis is not an objective or founded accusation for the reasons stated above.
> . . .
> [T]he Court cannot find misconduct that would warrant [dismissal] . . . . There is evidence of ineptitude on the house diagram, advocacy, expert witness preparation and inferential commentary by the prosecution and police, but nothing constituting deliberate deceitful statements or behavior.[34]

Based on this language, this Court must conclude that the state court found that prosecutors did not knowingly present false evidence and that this finding was central to its denial of the motion.[35]

Truman makes various attempts to show that the issues were not identical. Truman contends that the finding of no knowledge was not essential because the ultimate reason for the denial was that Utah law does not provide for dismissal as a remedy for prosecutorial misconduct. Truman relies on the court's closing paragraph, which reads in full:

> Finally, dismissal is not an appropriate remedy. The defense acknowledges there is no authority on point in Utah where dismissal was a remedy for misconduct. Here, the Court cannot find misconduct that would warrant such an extreme remedy, particularly where there are family members of the alleged victim who have an interest in having this case tried. There is evidence of ineptitude on the house diagram, advocacy, expert witness preparation and inferential commentary by the prosecution and police, but nothing constituting deliberate deceitful statements or behavior. If defendant is exonerated, he will have administrative and civil remedies rather than a remedy [of] dismissal of this matter.[36]

Truman misreads this language. The state court did not say that dismissal was unavailable as a remedy for prosecutorial misconduct, and certainly not in terms that reduced the rest of the decision to mere dicta. The state court noted that it was unclear whether such a remedy was available but explained that even if such a remedy were available it would not be warranted.

---

[34] Docket No. 132-5.

[35] *Cf. Phelps v. Hamilton*, 122 F.3d 1309, 1320 (10th Cir. 1997) (holding that Kansas state trial court's finding of no bad faith, on a motion to dismiss criminal charges for prosecutor's bad faith, was decisive in a § 1983 claim as to the issue of bad faith).

[36] Docket No. 132-5 at 5.

9

Truman also argues that the issues are not identical because the Order Denying Motion to Dismiss applied a different evidentiary standard than a § 1983 action. To prevail on a § 1983 fabrication of evidence claim, Truman must prove his case only by a preponderance of the evidence.[37] This is a far lower bar than Truman faced in convincing the state court to dismiss the prosecution against him; if such a remedy were available at all it would require clear evidence of grave misconduct.[38] In other words, the state court did not need to conclusively resolve whether Johnson knew of the errors, only that there was not overwhelming evidence that he did. However, this difference would not realistically change the outcome. The evidence Truman presented to the state court and his corresponding allegations here could plausibly prove only that Johnson should have known of the errors, not that he knew. Without evidence of knowledge, rather than negligence, Truman would not prevail on this issue under any standard. Because the difference in burden could not realistically result in a different outcome, it does not deny preclusive effect.

---

[37] *Truman*, 1 F.4th at 1236.

[38] *See* Docket No. 132-5 at 5 (referring to dismissal as an "extreme remedy"); Docket No. 132-4 at 3–4 (acknowledging in brief on Motion to Dismiss that "for the vast majority of instances, the remedy for prosecutorial or law enforcement misconduct is the grant of a new trial" but that "there are times when misconduct so permeates the proceedings that the result is the irreparable denial of due process") (citing *Greer v. Miller*, 483 U.S. 756, 765 (1987); *Lucero v. Kennard*, 2005 UT 79, 125 P.3d 917, 928, n.7 ("[A] court must dismiss a case with prejudice in instances where prosecutorial misconduct is so severe that lesser sanctions could not result in a fair trial."); *United States v. Daprano*, 505 F. Supp. 2d 1009, 1019 (D.N.M. 2007) ("[T]he sanction of dismissing an indictment is employed only in extreme cases of prosecutorial misconduct which is flagrant, egregious, deliberate, longstanding, and which results in prejudice to the accused which is irremediable by lest drastic means.") (internal quotation marks and citations omitted)); *United States v. Armstrong*, 517 U.S. 456, 464 (1996) ("[I]n the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties.") (internal quotation marks and citations omitted).

In sum, an essential issue in both proceedings was and is whether Johnson had at least some degree of knowledge about the measurement errors.[39] The state court squarely decided that issue against Truman when it found no such knowledge.

### 3. *The issue in the first action must have been completely, fully, and fairly litigated*

The "completely, fully, and fairly litigated" element stems "from fundamental due process and requires that litigants have their day in court."[40] This element requires no specific procedure, only that the issue be properly raised, submitted for determination, and determined.[41]

Truman raised and briefed the knowledge issue previously and had an opportunity to present his evidence. In his brief on the Motion to Dismiss, Truman made the same arguments about the prosecution's knowledge based on the same facts as in his § 1983 complaint in this Court.[42] The government responded, Truman elected not to file a reply or request a hearing,[43] and the state court decided the issue as explained above. This was complete, full, and fair litigation. Additionally, this Court has already found that the state-court decisions constituted full and fair litigation as to the police officers.[44]

Truman argues that the state court's decision was a "summary proceeding" like denial of summary judgment that did not conclusively resolve evidentiary issues.[45] This is not so. The state

---

[39] *Cf. Cook*, 547 F. App'x at 859 ("Essential to [plaintiff's] success in both proceedings was a finding that there was no probable cause for his detention, search, and arrest, and that the catheterization violated his constitutional rights. The state court decided those issues and Cook lost.").

[40] *3D Const. & Dev., L.L.C. v. Old Standard Life Ins. Co.*, 2005 UT App 307, ¶ 20, 117 P.3d 1082 (internal quotation marks and citation omitted).

[41] *Truman*, 1 F.4th at 1242.

[42] Docket No. 132-4 at 22–29.

[43] Docket No. 132-5 at 2.

[44] Docket No. 114 at 7, 10; *see also Truman*, 1 F.4th at 1242–44.

[45] Docket No. 135 at 21–26.

court evaluated the evidence Truman presented to resolve whether the prosecution knew of the errors. It found no evidence of deceit. This was a straightforward resolution of an evidentiary question, analogous not to a denial but to a grant of summary judgment against Truman.

### 4. The first suit must have resulted in a final judgment on the merits

A "final judgment on the merits" is a "judgment rendered only after a court has evaluated the relevant evidence and the parties' substantive arguments."[46] Whether a judgment is "on the merits" is "a matter of substance over form—'real or substantial grounds of action or defense as distinguished from matters of practice, procedure, jurisdiction or form.'"[47] "Final" does not mean dispositive of the case: "A judgment on the merits can be made at any point in litigation as long as it is 'based upon a proper application of the relevant law to the facts of the case.'"[48]

The Order Denying Motion to Dismiss was both final and on the merits. The state court denied the motion to dismiss for substantive reasons based on application of the facts to the law, concluding that there was no prosecutorial misconduct egregious enough to warrant dismissal.

Truman argues that the state-court decisions were not "final judgments on the merits" for various reasons.[49] First, Truman interprets the state court's statement that "[if] defendant is

---

[46] *Truman*, 1 F.4th at 1242 (quoting *In re D.A.*, 222 P.3d 1172, 1179 (Utah 2009)); *see also Heywood v. Dep't of Com., Div. of Real Est.*, 2017 UT App 234, ¶ 29, 414 P.3d 517 (finding a bankruptcy court's determination to be a final judgment on the merits where it was "a reasoned opinion setting forth detailed findings of fact and conclusions of law that support the bankruptcy court's determination").

[47] *Truman*, 1 F.4th at 1242. (quoting *Sommerville*, 297 P.3d at 674).

[48] *Id.* (quoting *Miller v. USAA Cas. Ins. Co.*, 44 P.3d 663, 674 n. 6 (Utah 2002); *see also Phelps*, 1998 WL 154581, at *5 ("It has been observed that the requirement of finality in a prior action 'is applied less rigidly to issue preclusion than to claim preclusion,' and that '[f]or purposes of issue preclusion, a final judgment includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.' '"Finality" for purposes of collateral estoppel means merely that the issue has been fully litigated.'") (quoting Charles Alan Wright, *Law of Federal Courts* § 100A, at 725 (5th ed. 1994); *United Bus. Commc'ns v. Racal-Milgo, Inc.*, 591 F. Supp. 1172, 1185–86 (D. Kan. 1984)).

[49] Docket No. 135 at 27.

exonerated, he will have administrative and civil remedies rather than a remedy dismissal of this matter" as an express statement that the order was without prejudice.[50] This was not an express statement of no prejudice.[51] Furthermore, even if the statement implied "without prejudice," that would not render the decision non-final for issue preclusion. A dismissal of a *claim* (or here, denial of a motion) "without prejudice" does not render the determination of a related *issue* non-final.[52]

Truman cites *Amundsen v. University of Utah*[53] and *State v. Sommerville*[54] to argue that the ruling was not on the merits,[55] but these cases are inapposite. In both, Utah courts held that dismissals that were procedural in nature—lack of jurisdiction in *Amundsen*, voluntary dismissal in *Sommerville*—were not judgments on the merits for preclusion purposes. Here, the state court denied Truman's Motion to Dismiss by evaluating facts and applying the law, not for an unrelated procedural reason.

Truman also maintains that the state court ruled that fact disputes related to prosecutorial misconduct remained for the jury to resolve in the second trial.[56] But the state court did not say that the jury would resolve prosecutorial misconduct issues, only that the defense could use evidence of police negligence at trial to detract from the weight of the evidence.[57]

---

[50] Docket No. 135 at 27–28 (citing *Macris & Associates, Inc. v. Neways, Inc.*, 2000 UT 93, ¶¶ 38–43, 16 P.3d 1214).

[51] *Cf.* Docket Nos. 138-2 and 138-3 (showing the state court expressly stating that other rulings were "without prejudice").

[52] *Oman*, 2008 UT 70, ¶¶ 30–32; *cf. Matosantos Com. Corp. v. Applebee's Int'l, Inc.*, 245 F.3d 1203, 1209 (10th Cir. 2001) (explaining that collateral estoppel bars relitigating issues previously decided "under the guise of new claims for relief").

[53] 2019 UT 49, ¶ 24, 448 P.3d 1224.

[54] 2013 UT App 40, ¶ 32, 297 P.3d 665.

[55] Docket No. 135 at 28–29.

[56] *Id.* at 29.

[57] Docket No. 132-5 at 2–3.

Next, Truman argues that his acquittal on the criminal charges renders the pretrial rulings non-preclusive.[58] Truman cites *Williams v. Henderson*, in which the Tenth Circuit explained that a pretrial order finding probable cause was not preclusive in a § 1983 proceeding in part because the convictions were vacated for reasons that cast doubt on the validity of that finding—*i.e.*, the police misconduct that prompted the convictions to be vacated had contributed to the finding of probable cause.[59] Nothing about Truman's acquittal casts doubt on the state court's finding that the prosecutor lacked knowledge of the measurements' falsity.

Finally, Truman argues that the decision was not final because review was unavailable.[60] However, Utah Rule of Appellate Procedure 5(a) and Utah Code Ann. § 78A-3-102(3)(h) authorized interlocutory review.[61] Neither the fact that review was discretionary nor the fact that Truman did not avail himself of it rendered it unavailable.[62]

5. Interests of Policy/Justice

Utah courts recognize that "collateral estoppel can yield an unjust outcome if applied without reasonable consideration and due care," and therefore courts "must carefully consider whether granting preclusive effect to a prior decision is appropriate."[63] The Restatement (Second)

---

[58] Docket No. 135 at 29.

[59] 626 F. App'x 761, 765–66 (10th Cir. 2015).

[60] Docket No. 135 at 29–30.

[61] *See, e.g.*, *State v. DeJesus*, 2017 UT 22, ¶ 17, 395 P.3d 111 (showing criminal defendant filing interlocutory appeal on denial of motion to dismiss for due process violation).

[62] *See Parkinson v. Sanderson*, No. 2:15-cv-00796-JNP-EJF, 2019 WL 4935513 (D. Utah July 31, 2019), *report and recommendation adopted*, No. 2:15-cv-00796-JNP-EJF, 2019 WL 4746507 (D. Utah Sept. 30, 2019) (giving preclusive effect to denial of motion to suppress where interlocutory appeal had been available but not used); Restatement (Second) of Judgments § 28 cmt a.

[63] *Buckner*, 2004 UT 78, ¶ 15.

of Judgments explains that "the policy supporting issue preclusion is not so unyielding that it must invariably be applied, even in the face of strong competing considerations."[64]

The policies supporting issue preclusion are to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication,"[65] as well as to preserve comity and federalism.[66] These purposes weigh in favor of applying issue preclusion here. Re-evaluating an issue already decided by a court would harm judicial integrity and judicial economy. Finding the state-court decisions not preclusive would be inconsistent with this Court's earlier finding of preclusion as to the police officers. There is some degree of harassment in suing Johnson even once for something a competent court has already decided he did not do. And comity and federalism favor honoring the state court's finding. Although a case could arise in which circumstances warranted declining to apply issue preclusion, this is not that case. Issue preclusion properly bars Truman's claim.

### IV. CONCLUSION

It is therefore

ORDERED that Defendants' Motion for Summary Judgment (Docket No. 132) is GRANTED.

DATED this 23rd day of February, 2022.

BY THE COURT:

_____
Ted Stewart
United States District Judge

---

[64] Restatement (Second) of Judgments § 28 cmt g.

[65] *Allen*, 449 U.S. at 94; *cf. Buckner*, 2004 UT 78, ¶ 14 (stating the purposes of collateral estoppel as preserving judicial integrity, promoting judicial economy, and protecting litigants from harassment).

[66] *Allen*, 449 U.S. at 96.